**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

NELSON WHITE, JR., LISA WHITE, CHARLES    :
HIGHTOWER, COLLEEN HIGHTOWER, DAN    :
B. JOHNSTON, MICHELLE B. JOHNSTON,    :
GEORGE G. DONALD, LUZ GARCIA, KEVIN    :
ZIELINSKI, and JILL CRUMPLER, Individually and:
on behalf of all others similarly situated,    :
   :
        *Plaintiffs,*    :
   :
   :
  v.    :
   :   **Civil Action**
THE PNC FINANCIAL SERVICES GROUP,    :   **No. 2:11-cv-07928**
INC. (as successor-in-interest to NATIONAL CITY    :
CORPORATION, NATIONAL    :
CITY BANK, N.A., NATIONAL CITY    :
MORTGAGE A DIVISION OF NATIONAL CITY    :
BANK, NATIONAL CITY MORTGAGE    :
COMPANY, and NATIONAL CITY MORTGAGE    :
INSURANCE COMPANY, INC.), et al.,    :
   :
        *Defendants.*    :
   :

## PROPOSED ORDER

AND NOW, this _____ day of _____, 2012, upon

consideration of Defendant United Guaranty Residential Insurance Co.'s ("United Guaranty")

Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and

accompanying Memorandum of Law, it is hereby ORDERED that said Motion is GRANTED.

Plaintiffs' complaint is hereby DISMISSED with prejudice as to United Guaranty.

                            _____
                            The Honorable Lawrence F. Stengel
                            United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

NELSON WHITE, JR., LISA WHITE, CHARLES   :
HIGHTOWER, COLLEEN HIGHTOWER, DAN   :
B. JOHNSTON, MICHELLE B. JOHNSTON,   :
GEORGE G. DONALD, LUZ GARCIA, KEVIN   :
ZIELINSKI, and JILL CRUMPLER, Individually and :
on behalf of all others similarly situated,   :
  :
      *Plaintiffs,*   :
  :
  :
     v.   :
  :   **Civil Action**
THE PNC FINANCIAL SERVICES GROUP,   :   **No. 2:11-cv-07928**
INC. (as successor-in-interest to NATIONAL CITY :
CORPORATION, NATIONAL   :
CITY BANK, N.A., NATIONAL CITY   :
MORTGAGE A DIVISION OF NATIONAL CITY :
BANK, NATIONAL CITY MORTGAGE   :
COMPANY, and NATIONAL CITY MORTGAGE :
INSURANCE COMPANY, INC.), et al.,   :
  :
      *Defendants.*   :
  :

**MOTION TO DISMISS OF DEFENDANT UNITED GUARANTY**
**RESIDENTIAL INSURANCE COMPANY**

As more fully set forth in the accompanying Brief, defendant United Guaranty

Residential Insurance Company, pursuant to Federal Rule of Civil Procedure 12, respectfully

moves to dismiss the complaint against it with prejudice.

Dated:  November 26, 2012       Respectfully submitted,

        BY:     /s/ David E. Edwards
              David E. Edwards
              1650 Market Street
              1800 One Liberty Place
              Philadelphia, PA 19103
              (215) 864-7174/7166

              *Of Counsel:*

Michael B. Carlinsky
Jane M. Byrne
Brad Evan Rosen
**Quinn Emanuel Urquhart & Sullivan LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorneys for United Guaranty Residential
Insurance Company*
(215-864-6306/7166

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

NELSON WHITE, JR., LISA WHITE, CHARLES          :
HIGHTOWER, COLLEEN HIGHTOWER, DAN               :
B. JOHNSTON, MICHELLE B. JOHNSTON,              :
GEORGE G. DONALD, LUZ GARCIA, KEVIN             :
ZIELINSKI, and JILL CRUMPLER, Individually and  :
on behalf of all others similarly situated,     :
                                                :
             *Plaintiffs*,                                  :
                                                :
    v.                                          :
                                                :
THE PNC FINANCIAL SERVICES GROUP,               :
INC. (as successor-in-interest to NATIONAL CITY :
CORPORATION, NATIONAL                           :
CITY BANK, N.A., NATIONAL CITY                  :    Civil Action
MORTGAGE A DIVISION OF NATIONAL CITY            :    No. 2:11-cv-07928
BANK, NATIONAL CITY MORTGAGE                    :
COMPANY, and NATIONAL CITY MORTGAGE             :
INSURANCE COMPANY, INC.), UNITED                :
GUARANTY RESIDENTIAL                            :
INSURANCE COMPANY, PMI MORTGAGE                 :
INSURANCE COMPANY, MORTGAGE                     :
GUARANTY INSURANCE CORPORATION,                 :
GENWORTH MORTGAGE INSURANCE                     :
CORPORATION, REPUBLIC MORTGAGE                  :
INSURANCE COMPANY, RADIAN                       :
GUARANTY INC., and TRIAD GUARANTY               :
INSURANCE CORPORATION,.                         :
                                                :
             *Defendants*.                                  :

## TABLE OF CONTENTS

**Page**

I. PLAINTIFFS LACK ARTICLE III STANDING TO BRING CLAIMS AGAINST UNITED GUARANTY.................................................................................3

    A.    Plaintiffs Do Not Allege That United Guaranty Caused Them Injury ...................5

    B.    Plaintiffs' Conspiracy Allegations Are Insufficient To Confer Article III Standing Over United Guaranty...........................................................................6

    C.    Plaintiffs' RESPA Claims Fail For Lack of Statutory Standing............................8

II. PLAINTIFFS' RESPA CLAIMS ARE UNTIMELY.......................................................10

    A.    Equitable Tolling Does Not Apply ......................................................................11

    B.    United Guaranty Did Not Fraudulently Conceal Plaintiffs' Claims.....................15

    C.    The "Discovery Rule" Does Not Toll the Statute of Limitations ...........................17

III. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAILS.............................................19

IV. PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND ...................................20

CONCLUSION.........................................................................................................................21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aguilar v. Allstate Fire & Cas. Ins. Co.*,
    2007 WL 734809, *5 (E.D. La. Mar. 6, 2007) ............................................ 6

*Allen v. Wright*,
    468 U.S. 737 (1984) ......................................................................................... 3

*Bohus v. Beloff*,
    950 F.2d 919 (3d Cir. 1991) .......................................................................... 17

*Common Cause of Pennsylvania v. Pennsylvania*,
    558 F.3d 249 (3d Cir. 2009) ............................................................................ 4

*Grand Union Supermarkets of the Virgin Islands, Inc. v. Lockhart Realty Inc.*,
    11-1963, 2012 WL 3328836, at *6 (3d Cir. Aug. 15, 2012) ......................... 19

*Hovenkotter v. Safeco Corp.*,
    2009 WL 6698629, *4 (W.D. Wash. Aug. 3, 2009) ....................................... 5

*Johnson v. Geico Cas. Co.*,
    673 F. Supp. 2d 244 (D. Del. 2009) ................................................................ 6

*Lee v. Am. Nat. Ins. Co.*,
    260 F.3d 997 (9th Cir. 2001) ........................................................................... 5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................... 4, 5

*McCarn v. HSBC USA, Inc.*,
    1:12-CV-00375 (E.D. Cal.) ..................................................................... passim

*Mest v. Cabot Corp.*,
    449 F.3d 502 (3d Cir. 2006) ..................................................................... 17, 19

*Perez v. State Farm Mut. Auto. Ins. Co.*,
    2011 WL 5833636, *2 (N.D. Cal. Nov. 15, 2011) ......................................... 5

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008) ......................................................................................... 4

*Synesiou v. DesignToMarket, Inc.*,
    01-5358, 2002 WL 501494, at *4 (E.D. Pa. Apr. 3, 2002) ........................... 19

*Taliaferro v. Darby Twp. Zoning Bd.*,
    458 F.3d 181 (3d Cir. 2006) ............................................................................ 4

*U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC,*
    519 F. Supp. 2d 515 (E.D. Pa. 2006) ........................................................................ 16, 17

## **STATUTES**

12 U.S.C. § 2601 ............................................................................................................... 2

12 U.S.C. § 2607(b) ....................................................................................................... 2, 9

12 U.S.C. 2607(a) ............................................................................................................. 2

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 1, 4

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 8

## Introduction

Plaintiffs Nelson White, Jr., Lisa White, Charles Hightower, Colleen Hightower, Dan B. Johnston, Michelle B. Johnston, George G. Donald, Luz Garcia, Kevin Zielinski, and Jill Crumpler (collectively, "Plaintiffs") have filed a putative class action lawsuit against seven defendants, including United Guaranty Residential Insurance Co. ("United Guaranty"). Plaintiffs seek to assert claims for violation of the Real Estate Settlement Procedures Act ("RESPA") and unjust enrichment based on United Guaranty's alleged involvement in a so-called "kickback scheme" relating to the mortgage insurance Plaintiffs procured for their various residences.

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), United Guaranty moves to dismiss Plaintiffs' complaint as to it, with prejudice. Plaintiffs lack Article III standing and statutory standing under RESPA to sue United Guaranty because United Guaranty did not insure any of their home loans, and thus did not cause or contribute to Plaintiffs' alleged injuries. Moreover, Plaintiffs' claims are time-barred on their face because they were raised years after the expiration of the one-year statute of limitations under RESPA. Plaintiffs allege no facts to support any of the tolling doctrines they assert, including no facts showing that they used any diligence at all to discover their claims during the limitations period. Having tried twice already, through hundreds of allegations, to state valid and timely claims against United Guaranty, Plaintiffs should not be afforded another opportunity to amend their claims. United Guaranty's motion should be granted and Plaintiffs' claims should be dismissed with prejudice.

## Relevant Background

Plaintiffs filed their complaint against United Guaranty and seven other defendants on December 31, 2011, alleging claims for violation of RESPA and "common-law restitution/unjust

enrichment." Dkt. 1.  Before United Guaranty's motion to dismiss was due, other defendants filed their motion to dismiss claiming, among other things, that Plaintiffs lacked standing to sue them.  As a result, Plaintiffs filed their First Amended Complaint (the "Complaint") on September 27, 2012.  Plaintiffs' complaint is one of many filed by Plaintiffs' counsel in various jurisdictions throughout the country on behalf of different plaintiffs alleging identical RESPA violations, based on identical allegations, against similar groups of lenders and mortgage insurers.  In one such case pending in the Eastern District of California, *McCarn v. HSBC USA, Inc.*, 1:12-CV-00375 (E.D. Cal.), the court recently dismissed the plaintiffs' complaint with prejudice on grounds identical to those raised by United Guaranty in this motion.  United Guaranty attaches that ruling from the *McCarn* case (the "*McCarn* Dismissal Order") as Exhibit A.

Plaintiffs are home owners who obtained home-mortgage loans from defendant National City Mortgage ("National City") on various dates between January 2006 and December 2008. Complaint, ¶¶ 20-26.  Plaintiffs allege that National City bought mortgage insurance on their respective home loans from various mortgage insurers and further required the mortgage insurers to obtain "reinsurance" from a "captive" reinsurer affiliated with National City, called National City Mortgage Insurance Company, Inc. ("NCMIC").  Plaintiffs claim that this "scheme" whereby the mortgage insurers received a "steady stream of business" from National City in exchange for their agreements to cede "a portion of the premiums" they received from Plaintiffs to NCMIC was an unlawful "kickback" under the anti-kickback provisions of RESPA, 12 U.S.C. §§ 2601, *et seq.  See* Complaint, ¶¶ 1-14, 65.  Plaintiffs allege these reinsurance transactions violated their right under RESPA sections 2607(a) and (b) "to a real estate settlement free of unlawful kickbacks and unearned fees."  Complaint, ¶ 193.

It is undisputed that United Guaranty did not insure any of Plaintiffs' home loans. Rather, their loans were insured by defendants Mortgage Guaranty Insurance Corp., Genworth Mortgage Insurance Corp., Republic Mortgage Insurance Co., and Radian Guaranty Inc. (collectively, the "Defendant Mortgage Insurers"). *See* Complaint, ¶¶ 20-26. Indeed, Plaintiffs do not allege anything at all specific to United Guaranty, including that United Guaranty did anything that caused them harm, or that they have ever had any contact or relationship with United Guaranty.

In recognition that their claims are time-barred, Plaintiffs devote a full 26 paragraphs of their complaint to arguing why their claims are timely notwithstanding that they were raised several years after the loan closings and thus several years after the expiration of RESPA's one-year statute of limitations. *See* Complaint, ¶¶ 158-183. Again, however, nowhere in this lengthy discussion do Plaintiffs refer to United Guaranty by name, or identify anything specific it allegedly did, or did not do, that supports the tolling of the statute of limitations or the timeliness of Plaintiffs' claims.

## Argument

As discussed below, Plaintiffs' claims fail because Plaintiffs lack both Article III and statutory standing to bring their RESPA claims and, independently, because their RESPA claims and related unjust enrichment claims are untimely.

## I.   PLAINTIFFS LACK ARTICLE III STANDING TO BRING CLAIMS AGAINST UNITED GUARANTY

The Article III doctrine that "requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of" the "case-or-controversy doctrines [which] state fundamental limits on federal judicial power." *Allen v. Wright*, 468 U.S. 737, 750 (1984).

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

A defendant may raise a facial challenge to the existence of Article III standing under Federal Rule of Civil Procedure 12(b)(1), which provides for the dismissal of an action for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A plaintiff's complaint should be dismissed under Rule 12(b)(1) when it fails to satisfy the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.*, a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.*, a 'fairly traceable' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008) (quoting *id.* at 560-61). "Plaintiffs, as the parties invoking the federal courts' jurisdiction, bear the burden of establishing their standing." *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009); *see also Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002) ("The party seeking to invoke the jurisdiction of the federal courts has the burden of alleging specific facts sufficient to satisfy [the] three elements" of standing).

Here, Plaintiffs fail to establish Article III standing as to United Guaranty because they do not, and cannot, allege "a causal connection between [their purported] injury and the conduct" of United Guaranty. *Lujan*, 504 U.S. at 560-561. Plaintiffs' complaint should be dismissed under Rule 12(b)(1).

### A.     Plaintiffs Do Not Allege That United Guaranty Caused Them Injury

To establish the causation element of the constitutional standing requirement, a plaintiff

must show that the defendant's challenged actions, and not the independent actions of some third

party, caused the plaintiff's injury. *See Lujan,* 504 U.S. at 560.  Here, Plaintiffs allege that

defendant National City bought mortgage insurance on their respective loans from one of the

Defendant Mortgage Insurers in "exchange" for the Defendant Mortgage Insurers' agreements to

"cede" a portion of the insurance premiums paid by Plaintiffs to National City's captive

reinsurer, NCMIC, through the Defendant Mortgage Insurers' purchase of mortgage reinsurance

from NCMIC.  Complaint, ¶¶ 1-14, 65.  Plaintiffs do not allege that United Guaranty insured any

of their loans, "ceded" to NCMIC any of the insurance premiums on their loans, or indeed had

any other direct or indirect relationship with Plaintiffs or their mortgage insurance.  Thus, even

assuming Plaintiffs were "injured" by the mortgage insurance "scheme" they allege (which is

denied), nothing in their complaint establishes, or even suggests, a "causal connection between

[Plaintiffs' purported] injury and the conduct" of United Guaranty. *Lujan,* 504 U.S. at 560-561.

Absent any allegations that their alleged injuries are "fairly traceable" to the conduct of

United Guaranty, Plaintiffs have failed to establish Article III standing to raise their claims

against United Guaranty. *See, e.g., Lee v. Am. Nat. Ins. Co.,* 260 F.3d 997, 1002 (9th Cir. 2001)

(plaintiff lacked standing to challenge defendant insurer's marketing conduct because "he did not

buy any policy from [insurer] and so did not suffer any injury due to [insurer's] conduct").[1]

---

[1]     *See also, e.g., Perez v. State Farm Mut. Auto. Ins. Co.,* 2011 WL 5833636, *2 (N.D.
Cal. Nov. 15, 2011) (granting motion to dismiss because "Plaintiffs do not allege that they
bought any insurance policies from any of the Moving Parties, [thus] Plaintiffs did not suffer any
injury due to the conduct of the Moving Parties, which means that Plaintiffs lack Article III
standing to bring a case against the Moving Parties"); *Hovenkotter v. Safeco Corp.,* 2009 WL
6698629,*4 (W.D. Wash. Aug. 3, 2009) (granting motion to dismiss for lack of standing because
plaintiff "d[id] not link his injury with any action taken by either" non-insuring defendant);

B.  **Plaintiffs' Conspiracy Allegations Are Insufficient To Confer Article III Standing Over United Guaranty**

Recognizing that they have no standing to raise claims against United Guaranty based on United Guaranty's direct conduct, Plaintiffs allege that United Guaranty was a passive participant in an alleged conspiracy that caused them harm. *E.g.*, Complaint, ¶ 1. Such allegations are likewise insufficient to confer Article III standing over United Guaranty.

To the extent Plaintiffs attempt to allege a "hub and spoke" conspiracy, with National City as the "hub" and the mortgage insurer defendants as the "spokes," Plaintiffs would need to demonstrate the "interdependence between the spokes" by showing "that their *combined efforts were required to insure the success of the venture*." *United States v. Kelly*, 2012 WL 425969, *6 (W.D. Pa. Feb. 9, 2012) (emphasis added) (citation omitted). "If the spokes did not depend on each other, aid each other, or share any interest in the others' success, merely having the 'same goal' is insufficient to establish interdependence." *Id.*

Plaintiffs' complaint contains no allegations that the defendants' "combined efforts were required to insure the success" of the alleged conspiracy. In fact, the allegations in the complaint *belie* Plaintiffs' assertion that the alleged conspiracy "required the complicity and silence of all" mortgage insurers (Complaint, ¶ 15), and that the mortgage insurers "knew that they had to participate and perpetuate this hidden scheme." Complaint, ¶ 91. To the contrary, the facts alleged in the Complaint demonstrate that the opposite is true:  the captive reinsurance practices

---

*Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 244, 254 (D. Del. 2009) (granting motion to dismiss because "Plaintiffs' injuries are not traceable" to non-insuring defendants; rather, "Plaintiffs' alleged injuries are traceable to . . . the insurance companies which issued their policies"); *Aguilar v. Allstate Fire & Cas. Ins. Co.*, 2007 WL 734809, *5 (E.D. La. Mar. 6, 2007) ("The plaintiffs' concession that none of the named plaintiffs were insured by either Allstate Fire and Casualty or Allstate Property and Casualty is a concession that they lack standing to sue those defendants.").

that Plaintiffs challenge continued despite very public decisions by some of the mortgage insurers to cease reinsuring with captives, and their subsequent decisions to resume.  For example, Plaintiffs quote a Form 10-K filed by defendant Genworth in 2004 showing that Genworth suffered a "significant reduction in business" when it "generally sought to exit or restructure a portion of [its] excess-of-loss risk sharing arrangements" with captive reinsurers. Complaint, ¶ 89.  Likewise, Plaintiffs attached to their complaint an article published in *American Banker* that describes public efforts in 2003 by defendant MGIC to "cap at 25% the share of total premium revenue shared with banks' captive reinsurance units," which resulted in MGIC losing market share to its competitors, causing MGIC to "abandon" its "hard line."  Dkt. 83, Ex. 1 at 3.  Far from establishing that the "conspiracy" would collapse if any mortgage insurer withdrew from it, these allegations show that various alleged conspirators *did* "withdraw" at times, and that the only resulting harm was to the economic interests of those individual insurers, but not to the "conspiracy" itself.  Indeed, these allegations make it more plausible that each individual mortgage insurer would "prefer that fewer of its competitors participate in the scheme, as it would then enjoy that much more of the broker's steered business." *In re Ins. Brokerage Antitrust Lit.*, 618 F.3d 300, 332 (3d Cir. 2010) (plaintiff failed to plead "broker-centered" hub-and-spoke conspiracy "with the broker as the hub and its insurer-partners as the spokes" because "one cannot plausibly infer a horizontal agreement among a broker's insurer-partners from the mere fact that each insurer entered into a similar contingent commission agreement with the broker").

Plaintiff's own allegations show parallel, market conduct, rather than a scheme. Plaintiffs emphasize that the mortgage insurers "acceded to and willingly participated in National City's captive reinsurance arrangement" (Complaint, ¶ 92), and "chose [not] to do anything to

upset the operation of the scheme" (Complaint, ¶ 91) because the "benefit of having a guaranteed stream of referrals (from all sources) was too great to risk by blowing the whistle on or challenging *just one scheme*." *Id.* (emphasis added).  Plaintiffs concede that the alleged arrangements constituted multiple (alleged) parallel "schemes" and that each mortgage insurer's arrangement with NCMIC is "just one scheme" among them.  Complaint, ¶ 91.

Thus, in their attempt to allege a "hub-and-spoke" arrangement, Plaintiffs allege, at most, a "rimless wheel conspiracy . . . in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002) (rejecting the "proposition that a rimless wheel conspiracy constitutes a single, general conspiracy," and emphasizing that "a wheel without a rim is not a single conspiracy").  Without a "rim" that joins the "spokes" that was dependent upon United Guaranty's participation (in addition to that of all other private mortgage insurers), Plaintiffs' conspiracy allegations are insufficient to confer standing over United Guaranty. *See McCarn* Dismissal Order at *5 (dismissing RESPA claim with prejudice against non-insuring defendants based on lack of Article III standing because plaintiff failed to allege "that collective action was helpful to the individual participants, let alone that failure to act in concert would be economically self-defeating").

**C.   Plaintiffs' RESPA Claims Fail For Lack of Statutory Standing**

Because Plaintiffs do not have Article III standing, it is unnecessary for this Court to determine whether Plaintiffs have statutory standing under RESPA. *See Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) (Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing").

Nevertheless, even if this Court finds that Plaintiffs have alleged Article III standing, it should nevertheless dismiss Plaintiffs' claims against United Guaranty under Rule 12(b)(6) for lack of statutory standing, because RESPA does not provide a cause of action to Plaintiffs against United Guaranty, as a non-insuring alleged co-conspirator. *See Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011) (evaluating motion to dismiss based on lack of statutory standing under Rule 12(b)(6) because "[a] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim").

Section 2607 of RESPA prohibits two types of activity, which can be described in the simplest terms as (a) kickbacks and (b) split charges. The prohibition against kickbacks states:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a). The prohibition against split charges states:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

Plaintiffs do not have standing to sue United Guaranty under Section 2607(a). Because United Guaranty did not insure their loans, United Guaranty never provided *any* settlement service "involving" Plaintiffs' mortgage loans. Plaintiffs do not (and cannot) allege that United Guaranty provided them any settlement services. Nor could United Guaranty have reached an "agreement or understanding" with National City that any business involving *Plaintiffs'* loans would be referred to United Guaranty or to anyone else. Thus, United Guaranty could not have "give[n]," nor could National City have "accept[ed]," any "fee, kickback, or thing of value" pursuant to such a non-existent agreement.

Similarly, Plaintiffs do not have standing to sue United Guaranty under Section 2607(b). Because it did not insure their loans, United Guaranty never received any "charge" "in connection with a transaction" "involving" Plaintiffs' loans. Hence, United Guaranty could not have "give[n]," nor could National City have "accept[ed]," a "portion, split, or percentage" of any such charge. Here too, Plaintiffs do not allege that United Guaranty received or paid any charge or split.

These conclusions are reinforced by Section 2607's remedial provision which states:

> Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for *the settlement service involved in the violation* in an amount equal to three times the amount of any charge paid for such settlement service.

12 U.S.C. § 2607(d)(2) (emphasis added).  On its face, this provision cannot give Plaintiffs any right of recovery against United Guaranty because United Guaranty did not "charge" and was not "paid" for a "settlement service involved in the [alleged] violation" relating to Plaintiffs or their loans.

Instead, Plaintiffs allege that United Guaranty "charged" for "settlement services involved in [alleged] violations" relating to *other* borrowers' loans.  It makes no sense to construe Section 2607(d)(2) as entitling Plaintiffs to recover "three times the amount" of mortgage insurance charged for *other* borrowers' loans.  Yet, that is the illogical result that Plaintiffs urge this Court to adopt.

Accordingly, the plain language of RESPA does not give Plaintiffs standing to sue United Guaranty.  Plaintiffs' claims should therefore be dismissed for lack of statutory standing.

## II.  PLAINTIFFS' RESPA CLAIMS ARE UNTIMELY

If the Court finds that Plaintiffs have alleged both Article III standing and statutory standing under RESPA, their claims nevertheless fail because they are barred by the statute of

limitations. Plaintiffs' purported RESPA claims against United Guaranty arise under 12 U.S.C. § 2607. The statute of limitations for violations of section 2607 is "one year from the date of the occurrence of the violation," *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 306 (E.D. Pa. 2008), which, under RESPA, is the time of a loan closing. *See, e.g., Kamara v. Columbia Home Loans, LLC*, 654 F. Supp. 2d 259, 265 (E.D. Pa. 2009) (plaintiff/borrower's claims untimely under RESPA because the limitations period "began to run on the date of the closing . . . [and] the plaintiff did not bring her claim within one year of that date").

Thus, the statute of limitations on Plaintiffs' alleged RESPA claims began to run when Plaintiffs closed their loans on various dates between January 2006 and December 2008. *See* Complaint, ¶¶ 20-26. Because Plaintiffs did not file their RESPA claims against United Guaranty until December 31, 2011, years after the statute of limitations had expired for all Plaintiffs, Plaintiffs' RESPA claims are untimely, and must be dismissed, unless they were tolled until December 31, 2010 – one year before they filed their complaint. As discussed below, Plaintiffs have failed to allege facts sufficient to support the application of any of the tolling doctrines on which they rely, and their claims are therefore barred by the statute of limitations.

A.    **Equitable Tolling Does Not Apply**

Equitable tolling may apply in limited circumstances to provide an exception to the time period set forth in a statute of limitations. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d. Cir. 1994). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling may apply "when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the

deception, fraud, or error . . . ." *Luntungan v. Atty. Gen. of U.S.*, 449 F.3d 551 n.15 (3d Cir. 2006) (quoting *Iturribarria v. I.N.S.*, 321 F.3d 889, 897 (9th Cir. 2003). "The doctrine of equitable tolling is not available to a party who fails to use due diligence to discover facts relevant to the cause during the limitations period." *Walck v. Discavage*, 741 F. Supp. 88, 91 (E.D. Pa. 1990) (citing *Abelson v. Strong*, 644 F. Supp. 524, 533 (D. Mass. 1986).

Equitable tolling is "applied sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005) ("Equitable tolling is an extraordinary remedy which should be extended only sparingly."). The Supreme Court "has permitted equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Young v. United States*, 535 U.S. 43, 50 (2002). Courts have been generally unforgiving, however, when a late filing is due to a claimant's failure "to exercise due diligence in preserving his legal rights." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Plaintiffs allege that "equitable tolling is available under RESPA and should apply" because "Plaintiffs and members of the putative Class could not, despite the exercise of due diligence, have discovered the underlying basis for their claims." Complaint, ¶ 158. In support, Plaintiffs allege that the "complex, actively hidden/misrepresented, undisclosed and self-concealing nature of Defendants' scheme" precluded them from obtaining "sufficient information or . . . requisite expertise in order to enable them to discover the true nature of Defendants' captive reinsurance arrangements." Complaint, ¶ 159.

Plaintiffs' allegations do not support equitable tolling. They have not alleged any facts suggesting that they exercised due diligence – or in fact any diligence at all – to identify their

claims *during the limitations period.*  Nor do they identify any "extraordinary circumstances," "deception" or "error" that prevented them from discovering their claims during the limitations period, such as missing loan documents that they were unable to obtain through the exercise of diligence.  *See Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 517 (E.D. Pa. 2009) (dismissing claim for violation of RESPA as untimely, and rejecting equitable tolling, because the plaintiffs did "not allege any 'extraordinary' obstacles to timely filing, nor [did] they allege a single 'affirmative act of independent concealment' by" the defendant).

Plaintiffs' unsupported allegations that defendants' conduct was "undisclosed" and "self-concealing" (Complaint, ¶ 159) are likewise insufficient to support equitable tolling.  "For a RESPA claim to warrant equitable tolling, mere silence or nondisclosure is not enough to trigger estoppel . . . ."  *Garczynski*, 656 F. Supp. 2d at 516.  Rather, "the adversary must commit some affirmative independent act of concealment upon which the plaintiffs justifiably rely in order to toll the statute."  *Id.*.  Plaintiffs have alleged no specific facts suggesting an improper disclosure or other improper concealment by United Guaranty.  In any event, Plaintiffs' own allegations – which are binding judicial admissions, *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) – demonstrate active disclosure, rather than concealment.  *See* Complaint ¶¶ 83, 89-90, 109, 110, 123; *see also Conte Bros. Auto. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 235 (3d Cir. 1998) (Alito, J.) (relying on judicial admission in briefing on motion to dismiss).  Plaintiffs' conclusory allegation of defendants' "undisclosed" conduct do not support equitable tolling.

Plaintiffs also fail to allege equitable tolling because they do not state when they discovered their claims or what occurred that allowed them to do so.  *See Garczynski*, 656 F. Supp. 2d at 516 (declining to apply equitable tolling, and therefore dismissing plaintiff's RESPA

and TILA claims, because plaintiffs failed to put forth any reason as to why they were unaware or unable to discover the alleged violation). The most Plaintiffs say about this is that they "were able to discover the underlying basis for the claims alleged herein only with the assistance of counsel." Complaint, ¶ 162. But the mere fact that Plaintiffs chose to wait to hire a lawyer does not constitute "*extraordinary circumstances*" that could support equitable tolling. *See McCarn* Dismissal Order at *13 (plaintiff's claim that he was unable to discover the underlying basis for his claims without the assistance of counsel did not "constitute[] an 'extraordinary circumstance' that prevented him from filing his claim within the limitations period"). Indeed, "to follow [Plaintiffs'] line of reasoning, any plaintiff who requires the assistance of counsel to discover the existence of a claim, including plaintiffs who conduct virtually no diligence, would be automatically entitled to equitable tolling of the statute of limitations for an indefinite period of time until that plaintiff retains counsel." *Id.* This cannot be, and is not, the law.

Further, any suggestion by Plaintiffs that they could not have found counsel to assist with their claims earlier than they did is belied by the fact that Plaintiffs' lawyers have been filing similar suits alleging the same RESPA violations for years, including before and during Plaintiffs' one-year limitations periods, and including several in this district. *See Alston v. Countrywide Fin. Corp.*, No. 06-CV-08174 (C.D. Cal., Dec. 22, 2006) (transferred to E.D. Pa. under No. 07-CV-03508), *Moore v. GMAC LLC*, No. 07-CV-04296 (E.D. Pa., Oct. 12, 2007); *Alexander v. Washington Mut., Inc.*, No. 07-CV-04426 (E.D. Pa., Oct. 22, 2007); *Liguori v. Wells Fargo & Co.*, No. 08-CV-00479 (E.D. Pa., Jan. 31. 2008); *Munoz v. PHH Corp.*, No. 08-CV-00759 (E.D. Cal., June 2, 2008). The statute of limitations would be rendered meaningless if Plaintiffs' counsel were permitted to repeatedly bring similar suits whenever they found another plaintiff to educate about the same alleged violations, no matter when those violations occurred.

Accordingly, Plaintiffs' allegations, which reflect delay and not diligence, and do not identify any extraordinary circumstances that prevented them from obtaining vital information bearing on the existence of their claims, are insufficient to support equitable tolling.

**B.     United Guaranty Did Not Fraudulently Conceal Plaintiffs' Claims**

Plaintiffs also allege that "Defendants engaged in affirmative acts to conceal the facts and circumstances giving rise to the claims asserted herein and made false representations about the nature of [their] reinsurance arrangements." Complaint, ¶ 172.  Where the basis of equitable tolling is fraudulent concealment, the claim must be pled with "the particularity required by Federal Rule of Civil Procedure 9(b) . . . ." *Hansen v. Shearson/Am. Exp., Inc.*, 890 F. Supp. 416 n.6 (E.D. Pa. 1995); *see Andrew v. Ivanhoe Fin., Inc.*, CIV. A. 07-729, 2008 WL 2265287, at *5 (E.D. Pa. May 30, 2008) ("Allegations of fraudulent concealment tolling the statute of limitations must meet the [particularity] requirements of Federal Rule of Civil Procedure 9(b)."); *Gurfein v. Sovereign Group*, 826 F.Supp. 890, 920 (E.D. Pa. 1993) ("As with all allegations of fraud, the claim of fraudulent concealment must be pled with particularity pursuant to Fed. R.Civ. P. 9(b)."). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).  Moreover, where, as here, there are multiple defendants alleged to have fraudulently concealed the plaintiff's claims, the plaintiff must identify "specific conduct of the defendant that entitles the plaintiff to toll the statute against *that* defendant." *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1356 (S.D. Ga. 2000) (emphasis in original).

Plaintiffs have failed to allege fraudulent concealment as to United Guaranty with any particularity.  Within the 25 paragraphs in Plaintiffs' complaint that purport to discuss the factual basis for their fraudulent concealment defense to the statute of limitations (¶¶ 158-183),

*Plaintiffs do not reference United Guaranty a single time*.  Nor do they reference any conduct allegedly taken by the entire group of "Private Mortgage Insurer Defendants," which Plaintiffs defined to include United Guaranty.  Instead, the only allegations of non-disclosure or affirmative misrepresentations of fact are directed against the National City lending parties, and even those allegations are unspecific and insufficient to plead fraudulent concealment under Rule 9(b), as they fail to state the "who, what, when, where, and how" of the alleged fraud.  *See McCarn* Dismissal Order at *12 (finding no fraudulent concealment of plaintiff's RESPA claim because plaintiff failed to "state with particularity" what "conduct the Defendants concealed from the regulators, what disclosures Defendants made that were incomplete or inaccurate, or how these defective disclosures prevented Plaintiff from obtaining information about his claim").

Moreover, Plaintiffs' allegations that the reinsurance relationship between United Guaranty and National City was "concealed" from them are contradicted by other allegations in, and documents attached to, their complaint, and should therefore be rejected.  *See U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC,* 519 F.Supp. 2d 515, 520 (E.D. Pa. 2006) ("Nor must a court accept as true conclusory allegations contradicted by documents underlying the complaint").  Plaintiffs *admit* that a risk-sharing agreement between their lender and their mortgage insurers was disclosed *in their mortgages*.  Complaint, ¶ 176, Ex J.  These disclosures even explained that the practice is called "captive reinsurance."  Complaint, ¶ 176.  These allegations undermine the gravamen of Plaintiffs' fraudulent concealment claim, which is that defendants (despite having no disclosure requirements whatsoever, and none alleged in the complaint) failed to disclose their reinsurance arrangement or the mechanics of captive reinsurance.

Plaintiffs' allegations that they were ignorant of their claims until recently also fail on their face because they are contradicted by the news articles and legal and regulatory documents

dating back to the late 1990s on which Plaintiffs rely in their complaint. Plaintiffs allege that

these publicly-available documents contain detailed information about the defendants' allegedly

"undisclosed" scheme that they allegedly did not discover, and could not have discovered, until

just before filing their complaint. *See, e.g.*, Complaint, Exs. 38 (March 23, 1998 article entitled

*Using a Bank Captive Subsidiary to Reinsure Mortgage Insurance*), 42 (February 1, 1998 article

entitled *Investigating Captive Mortgage Reinsurance*), 54 (August 6, 1997 "HUD Letter"

allegedly prepared to address "the problem of captive reinsurers and RESPA's anti-kickback

violations" (Complaint, ¶ 90)), 45-47, 53, 63, (excerpts from Genworth Financial's and Radian

Group's 2004 and 2005 public filings), and 65 (April 26, 2006 congressional testimony of HUD

Deputy Assistant Secretary for Regulatory Affairs).[2] Plaintiffs do not allege that any of this

information, which addresses the same "scheme" Plaintiffs allege herein, was hidden from them

until shortly before they filed their complaint, and their reliance on it therefore undermines their

fraudulent concealment claims.

### C.    The "Discovery Rule" Does Not Toll the Statute of Limitations

Finally, Plaintiffs cannot salvage their untimely claims against United Guaranty based on

the "discovery rule." The discovery rule tolls the accrual of the statute of limitations when a

plaintiff is unable, "despite the exercise of due diligence, to know of the injury or its cause."

*Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006). The discovery rule focuses not on "the

plaintiff's actual knowledge, but rather on whether the knowledge was known, or through the

exercise of diligence, knowable to" the plaintiff. *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir.

1991) (internal quotation omitted). A plaintiff therefore is obligated "to exercise reasonable

---

[2]    For purposes of this motion to dismiss, Plaintiffs' allegations that are contradicted by these public documents need not, and should not, be accepted as true. *See, e.g., U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 520 (E.D. Pa. 2006) (court may reject allegations "contradicted by documents underlying the complaint").

diligence in ascertaining the existence of the injury and its cause." *Mest*, 449 F.3d at 511. Under the discovery rule, "as soon as the plaintiff either has discovered or, exercising reasonable diligence, should have discovered the injury and its cause, the statute of limitations begins to run." *Id.* To demonstrate reasonable diligence, a plaintiff must "establish that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Id.* (citations omitted).

Plaintiffs have not come close to showing that the discovery rule applies. Rather than plead "the time and manner of discovery," Plaintiffs have studiously avoided providing any information about when they discovered their claims or the circumstances that led them to do so. This Court therefore has no means of determining whether or not the discovery of the asserted invasion was made within the time alleged or whether, and if so when, Plaintiffs actually learned something they did not know before. Nor does Plaintiffs' excuse for their alleged late discovery of the facts underlying their claims pass muster. Although Plaintiffs broadly allege that the National City defendants failed to disclose certain unspecified information about the reinsurance of Plaintiffs' mortgage insurance, they do not allege that they were unable to investigate whether information was missing from their loan documents from the moment they received those documents. Nor can they show that they would not have reasonably been able to discover the alleged deficiencies in National City's disclosures had they been diligent in trying to do so.

Finally, as shown above, Plaintiffs *were* able to obtain information about their claims by reviewing publicly-available news articles, regulatory filings and court documents, many of which were available to Plaintiffs during the one-year limitations period or, at the latest, long before Plaintiffs filed their lawsuit. *See*, *e.g.*, Complaint, Exs. 34, 42, 45, 46, 47, 53, 63 and 65.

Plaintiffs also allege that, "*beginning in 1999*, several of the nation's major private mortgage insurance providers were sued separately for analogous allegations involving RESPA violations." Complaint, ¶ 102 n. 13 (citing cases) (emphasis added).  Plaintiffs do not allege, and could not allege, that they did not have access to these public sources of information at the time they signed their loan documents, or that they could not have obtained this information through the exercise of diligence.  Plaintiffs therefore have failed to demonstrate that they pursued the cause of their harm "with those qualities of attention, knowledge, intelligence and judgment which society requires of its members." *Mest*, 449 F.3d at 511; *see also McCarn* Dismissal Order at *13 (declining to apply discovery rule because plaintiff's complaint "contain[ed] no facts showing the time and surrounding circumstances of the discovery of the cause of action  as required for the application of delayed discovery").

In sum, Plaintiffs have failed to allege facts sufficient to support the application of equitable tolling, based on fraudulent concealment or otherwise, or to show that the discovery rule applies to toll their RESPA claims.  Plaintiffs' RESPA claims are therefore time-barred.

## III.    PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAILS

Plaintiffs' second cause of action, captioned "Common-law Restitution/Unjust Enrichment," should be dismissed with prejudice, for two main reasons.  First, Plaintiffs' unjust enrichment claim is entirely coextensive with Plaintiffs' RESPA claim, and it therefore is barred for the same reasons as discussed above.  *See Grand Union Supermarkets of the Virgin Islands, Inc. v. Lockhart Realty Inc.*, 2012 WL 3328836, at *6 (3d Cir. Aug. 15, 2012) (plaintiffs' "unjust enrichment claim should have been dismissed on the same basis as the fraud claim" because "an unjust enrichment claim is essentially another way of stating a traditional tort claim"); see also

*see also McCarn* Dismissal Order at *5 (dismissing plaintiff's unjust enrichment claim as untimely after finding plaintiff's RESPA claim untimely).

Second, "the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Synesiou v. DesignToMarket, Inc.*, 2002 WL 501494, at *4 (E.D. Pa. Apr. 3, 2002). Here, Plaintiffs have no quasi-contractual right to recovery because Plaintiffs' claims are based on binding agreements with their lender. Plaintiffs' second cause of action should therefore be dismissed against United Guaranty, with prejudice.[3]

## IV.   PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND

Plaintiffs should not be granted leave to amend their complaint again. Plaintiffs' complaint includes 203 paragraphs of allegations, none of which pertains to any direct conduct of United Guaranty that allegedly caused them injury. Nor could Plaintiffs allege any such conduct, as United Guaranty did not insure their home loans and has had no relationship or contact with Plaintiffs. Plaintiffs therefore have no Article III standing or statutory standing under RESPA to sue United Guaranty for RESPA violations, and they could not cure this fatal defect in their claims through further amendment. Nor could Plaintiffs cure the untimeliness of their claims through further leave to amend. Plaintiffs have already devoted 26 paragraphs of their complaint attempting to allege that their claims are timely. If the Court agrees that Plaintiffs have failed to adequately do so despite their extensive efforts, it should dismiss the complaint with prejudice because there is no basis to conclude that Plaintiffs could cure this

---

[3]   Even if Plaintiffs' unjust enrichment/restitution claim were otherwise viable, it is untimely as to at least plaintiffs Nelson White, Jr., Lisa White, Charles Hightower, Colleen Hightower, George G. Donald, Kevin Zielinski, and Jill Crumpler because it was raised outside the four-year limitations period that applies to unjust enrichment claims. *See* 42 Pa.C.S.A. § 5525(4)

defect through further amendment, particularly given Plaintiffs' admissions – which may not be contradicted in an amended pleading – that information about their alleged claims has been publicly-available for many years.

Plaintiffs have taken their best shot at stating valid claims against United Guaranty, but they have failed to do so. In the interests of fairness and judicial economy, Plaintiffs' complaint should be dismissed with prejudice.

### Conclusion

For the foregoing reasons, United Guaranty respectfully requests that the Court dismiss Plaintiffs' First Amended Class Action Complaint against it, with prejudice.

Dated:  November 26, 2012                    Respectfully submitted,

                              BY:    /s/ David E. Edwards
                                     David E. Edwards
                                     1650 Market Street
                                     1800 One Liberty Place
                                     Philadelphia, PA 19103
                                     (215) 864-7174/7166

                                     *Of Counsel*:

                                     Michael B. Carlinsky
                                     Jane M. Byrne
                                     Brad Evan Rosen
                                     **Quinn Emanuel Urquhart & Sullivan LLP**
                                     51 Madison Avenue, 22nd Floor
                                     New York, New York 10010

                                     *Attorneys for United Guaranty Residential*
                                     *Insurance Company*
                                     (215-864-6306/7166

# EXHIBIT A

1

2

3

4

5

## UNITED STATES DISTRICT COURT

6

## FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8 | LUCAS E. MCCARN, individually and on behalf of all others similarly situated, | 1:12-CV-00375-LJO-SKO

9 | Plaintiff, | **ORDER ON MOTIONS TO DISMISS**
(Doc. 94, 106, 111, 117)

10 | v.

11 | HSBC USA, INC., HSBC BANK USA, N.A.,
12 | HSBC MORTGAGE CORPORATION, HSBC
REINSURANCE (USA) INC., UNITED
13 | GUARANTY RESIDENTIAL INSURANCE CO.,
GENWORTH MORTGAGE INSURANCE
14 | CORP., REPUBLIC MORTGAGE INSURANCE
CO., MORTGAGE GUARANTY INSURANCE
15 | CORP., and RADIAN GUARANTY INC.

16

17 | Defendants.

18 | ## INTRODUCTION

19 |         On July 30, 2012, Plaintiff Lucas E. McCarn ("Plaintiff") filed his first amended putative class-

20 | action complaint ("FAC") asserting violations of the Real Estate Settlement Procedures Act of 1974

21 | ("RESPA") and common law unjust enrichment claims against defendants HSBC USA, Inc.; HSBC

22 | Bank USA, N.A.; HSBC Mortgage Corp.; HSBC Reinsurance (USA), Inc. ("HSBC RE") (collectively,

23 | "HSBC Defendants"); United Guaranty Residential Insurance Co. ("United Guaranty"), Genworth

24 | Mortgage Insurance Corp. ("Genworth"); Republic Mortgage Insurance Co. ("Republic"); Mortgage

25 | Guaranty Insurance Corp. ("MGIC"); and Radian Guaranty, Inc. ("Radian") (collectively, "PMI

26 | Defendants"). Defendants filed motions to dismiss both causes of action in the FAC between August

27 | and October 2012. For the reasons discussed below, this Court GRANTS Defendants' motions to

28 | dismiss.

1

## BACKGROUND

**A. Facts**

Plaintiff Lucas E. McCarn obtained a mortgage loan from HSBC Mortgage Corp. on or about November 21, 2006. Doc. 88, ¶ 19. In connection with the loan, Plaintiff was required to and did pay for private mortgage insurance ("PMI") in the amount of $154.40 per month. *Id.* Borrowers do not generally have any opportunity to comparison-shop for mortgage insurance, which is arranged by the lender. *Id.* at ¶ 41. United Guaranty was selected by HSBC to provide PMI to Plaintiff. *Id.* at ¶ 19.

United Guaranty was a PMI provider with whom HSBC had a "captive reinsurance arrangement," whereby HSBC required the provider, as a condition of doing business with HSBC, to purchase reinsurance from HSBC RE, an HSBC subsidiary. *See id.* at ¶ 1. Plaintiff alleges that this type of arrangement was widespread throughout the mortgage lending marketplace and that it essentially amounted to the lender "coercing [PMI] insurers into cutting [the lender] in on ... [lucrative] insurance premiums in exchange for assuming little or no risk." *Id.* at ¶ 3. HSBC had the same or substantially similar captive reinsurance arrangements not only with United Guaranty, the provider of PMI to Plaintiff, but also with the other PMI Defendants. Plaintiff alleges all Defendants "acted in concert" to "effectuate a captive reinsurance scheme." *Id.* at ¶ 1. Plaintiff alleges that Defendants' "coordinated actions resulted in a reduction of competition in the mortgage insurance market and resulted in increased premiums for Plaintiff and the [putative] class." *Id.* at ¶ 15.

These captive reinsurance arrangements were the subject of regulatory attention in light of anti-kickback provisions contained within RESPA. *Id.* at ¶ 84-88. According to a 1997 letter issued by the United States Department of Housing and Urban Development ("HUD"), the agency charged with enforcing RESPA during most of the class period, captive PMI reinsurance arrangements were permissible under RESPA only if "the payments to the affiliated reinsurer: (1) are for reinsurance services 'actually furnished or for services performed' and (2) are bona fide compensation that does not exceed the value of such services[.]" *Id.* at ¶ 85. The HUD letter stated: "The reinsurance transaction cannot be a sham under which premium payments ... are given to the reinsurer even though there is no reasonable expectation that the reinsurer will ever have to pay claims." *Id.* Plaintiff alleges

2

1    that the type of reinsurance agreement utilized by HSBC with its PMI providers violated RESPA. *See*

2    *id.* at 84-88.  Plaintiff further alleges that HSBC Defendants received unjust enrichment from the

3    amounts ceded to HSBC RE as reinsurance premiums and that PMI Defendants received unjust

4    enrichment from the steady stream of business they received in return for ceding those portions of the

5    borrowers' premiums to HSBC Defendants. *Id.* at ¶¶178-183.

6    **B. Procedural History**

7         Plaintiff Lucas E. McCarn filed a putative class action complaint on March 12, 2012.  On May

8    29, 2012, this Court granted Defendants MGIC, PMI, Radian, and Republic's motion to dismiss with

9    leave to amend the complaint.[1]  This Court lifted a partial stay of the action pending the outcome of the

10   United States Supreme Court's decision in *First American Financial Corporation, et al. v. Edwards*,

11   132 S. Ct. 2536 (2012) on July 9, 2012, and Plaintiff filed the FAC on July 30, 2012.  The instant

12   motions to dismiss the FAC were filed by Defendants MGIC, Radian, and Republic on August 16,

13   2012, by Defendant United Guaranty on August 30, 2012, by Defendant Genworth on August 30,

14   2012, and by HSBC Defendants on October 5, 2012.  Plaintiff filed oppositions to the motions to

15   dismiss on October 26, 2012 and Defendants filed replies on November 5, 2012.

**DISCUSSION**

**Motion to Dismiss**

18   **A.    Dismissal under Fed. R. Civ. P. 12(b)(1)**

19        HSBC Defendants, MGIC, Republic, Radian, and Genworth challenge Plaintiff's standing to

20   sue the non-contracting Defendants, MGIC, Republic, Radian, and Genworth, pursuant to Fed. R. Civ.

21   Pro 12(b)(1), which provides for dismissal of an action for "lack of subject-matter jurisdiction."[2]

22   Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's

23   subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  A federal court

24   is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen.*

25   *Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981).

26   ---
[1] PMI Mortgage Insurance was later dismissed as a defendant on June 7, 2012. Doc. 77.
[2] Defendants MGIC, Republic, Radian, and Genworth also challenge the merits of Plaintiff's economic theory of injury as
27   well as the availability of conspiracy and aiding and abetting liability claims against non-contracting parties under RESPA.
Because this Court finds the standing and timeliness issues to be dispositive of Plaintiff's claims, it declines to address
28   these other issues at this time.

3

1    A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d

2    1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th

3    Cir. 2004):

4        In a facial attack, the challenger asserts that the allegations contained in a complaint are

5        insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack,

6        the challenger disputes the truth of the allegations that, by themselves, would otherwise

7        invoke federal jurisdiction.

8    In resolving a factual attack on jurisdiction, the district court may review evidence beyond the

9    complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v.*

10   *Glendale Union High School*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003); *McCarthy v. United States*,

11   850 F.2d 558, 560 (9th Cir. 1988).

12       HSBC Defendants, MGIC, Republic, Radian, and Genworth make a facial attack on the

13   sufficiency of the allegations in the FAC. The standards used to resolve motions to dismiss under Rule

14   12(b)(6) are relevant to disposition of a facial attack under 12(b)(1). *See Cassirer v. Kingdom of*

15   *Spain*, 580 F.3d 1048, 1052 n.2 (9th Cir. 2009) (applying *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) to a

16   motion to dismiss for lack of subject matter jurisdiction). As discussed further below, to sufficiently

17   state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual

18   allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative

19   level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a

20   "formulaic recitation of the elements of a cause of action will not do." *Id.*

21       The "irreducible constitutional minimum of standing" requires (1) the plaintiff to have

22   suffered an "injury in fact"; (2) a causal connection between the injury and conduct complained of; and

23   (3) that it must be likely that the injury will be redressed by a favorable decision." *Lujan v. Defenders*

24   *of Wildlife*, 504 U.S. 555, 560-61 (1991). The Ninth Circuit requires "[t]he party seeking to invoke the

25   jurisdiction of the federal Courts" to allege at the pleading stage "specific facts sufficient to satisfy" all

26   of the elements of standing for each claim he seeks to press. *Schmier v. U.S. Court of Appeals for*

27   *Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). "A federal court is powerless to create its own

28   jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495

                                                          4

1   U.S. 149, 155-56, (1990).   "It is a long-settled principle that standing cannot be inferred

2   argumentatively from averments in the pleadings." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231

3   (1990). "The facts to show standing must be clearly apparent on the face of the complaint." *Baker v.*

4   *United States*, 722 F.2d 517, 518 (9th Cir. 1983).   However, the factual allegations need not be made

5   with particularity beyond that required by *Twombly/Iqbal*.   Applying *Moss*, 572 F.3d at 969, standing

6   may be based on "non-conclusory factual content, and reasonable inferences from that content," in the

7   complaint that are "plausibly suggestive" of the existence of standing.

8           This Court previously granted non-contracting Defendants' motion to dismiss Plaintiff's

9   complaint for lack of standing under Fed. R. Civ. Pro. 12(b)(1) and allowed Plaintiff one chance to

10  amend his complaint to cure the deficiencies stated in the Order.[3]   Doc. 72.   Plaintiff then filed his First

11  Amended Complaint.   Doc. 88.   However, Plaintiffs again fail to make sufficient allegations to

12  establish standing with regard to the non-contracting Defendants MGIC, Republic, Radian, and

13  Genworth.

14          This Court previously found that Plaintiff failed to allege that any injury he suffered is fairly

15  traceable to the non-contracting Defendants.   Doc. 72.   In his original complaint, Plaintiff attempted to

16  allege a single over-arching wheel conspiracy but failed to allege sufficiently a "rim," or connection,

17  between the "spokes," or PMI Defendants.   *Id.* (internal citations and quotation omitted).

18  Significantly, Plaintiff failed to allege that collective action by the PMI Defendants was necessary to

19  maintain the scheme or that failure to act in concert would be economically self-defeating.   *Id.*   In his

20  FAC, Plaintiff again suggests a single, over-arching "rimmed" conspiracy but again fails to allege the

21  requisite connection between the PMI Defendants.   Plaintiff quotes an excerpt from Genworth's 10-K

22  showing that Genworth suffered a "significant reduction in business" from lenders when it "sought to

23  exit or restructure a portion of [its] excess-of-loss risk sharing arrangements," and that Genworth

24  "reinstated or restructured some of these arrangements."   Doc. 88 ¶ 78.   Based on this, Plaintiff argues

25  _____

26  [3] The Court notes that Genworth was not one of the non-contracting Defendants who had moved to dismiss the original
    complaint for lack of standing. Because the same deficiencies in the FAC that prevent Plaintiff from establishing standing

27  with regard to MGIC, Republic, and Radian also apply to destroy standing with regard to Genworth for the same reasons,
    and because Plaintiff specifically addressed Genworth in his FAC in an attempt to establish standing, the Court finds no
    reason to treat Plaintiff's claims against Genworth differently from Plaintiff's claims against the other non-contracting

28  Defendants MGIC, Republic, and Radian.

1    that PMI Defendants "knew they had to participate and perpetuate this hidden scheme," that "[t]he

2    single industry-wide scheme relied upon the cooperation of the Private Mortgage Insurers," and that

3    "[i]f any one of the Private Mortgage Insurers failed to act collectively or reported the scheme, then the

4    conspiracy would have failed." Doc. 88 at ¶¶ 79, 81. However, this shows, at most, that an individual

5    PMI provider pulling out of the arrangement would result in economic harm to that individual PMI

6    provider. It does not show or allow any reasonable inference that individual PMI providers failing to

7    participate in the scheme would result in the unraveling of the scheme itself or harm to other PMI

8    providers. In fact, it still does nothing to diminish the possibility that each PMI contracting with

9    HSBC actually would "prefer that fewer of its competitors participate in the scheme, as it would then

10   enjoy that much more of the [] steered business." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300,

11   332 (3rd Cir. 2010). Plaintiff emphasizes that PMI Defendants "acceded to and willingly participated

12   in HSBC's captive reinsurance arrangements," and "chose [not] to do anything to upset the operation

13   of the scheme," because "[t]he benefit of having a guaranteed stream of referrals (from all sources) was

14   too great to risk by blowing the whistle on just one scheme." But, as this Court previously explained,

15   the fact that an industry is insular does not automatically transform multiple, parallel schemes into one

16   unitary scheme. Doc. 72, p. 10. In fact, Plaintiff seems to admit that the alleged arrangements

17   constitute multiple parallel schemes and that each PMI provider's arrangement with HSBC is "just one

18   scheme" among those multiple schemes. Doc. 88, ¶ 80.

19        For these reasons, Plaintiff once again fails to include sufficient allegations to establish his

20   standing to bring suit against Defendants MGIC, Republic, Radian, and Genworth. Because Plaintiff

21   had one chance to amend his complaint to cure the deficiencies and failed to do so, Plaintiff's claims

22   against Defendants MGIC, Republic, Radian, and Genworth are DISMISSED WITH PREJUDICE.

23   **B.    Dismissal under Fed. R. Civ. P. 12(b)(6)**

24        Defendants also challenge the timeliness of Plaintiff's first cause of action under RESPSA

25   and argue that Plaintiff failed to state a claim upon which relief can be granted in his second cause of

26   action for common law unjust enrichment.

27        "When a federal court reviews the sufficiency of a complaint, before the reception of any

28   evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not

6

1   whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

2   support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974);

3   *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997).  A Fed. R .Civ. P. 12(b)(6)

4   dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of

5   sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d

6   696, 699 (9th Cir.1990); *Graehling v. Village of Lombard*, 58 F.3d 295,297 (7th Cir.1995).  A Fed. R.

7   Civ. P. 12(b)(6) motion "tests the legal sufficiency of a claim ." *Navarro v. Block*, 250 F.3d 729, 732

8   (9th Cir.2001).

9        In addressing dismissal, a court must: (1) construe the complaint in the light most favorable

10  to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether

11  plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut.*

12  *Ins. Co.*, 80 F.3d 336, 337–338 (9th Cir.1996).  Nonetheless, a court is not required "to accept as true

13  allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In*

14  *re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir.2008) (citation omitted).  A court

15  "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*

16  *Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff]

17  can prove facts that it has not alleged or that the defendants have violated ... laws in ways that have not

18  been alleged." *Associated General Contractors of California, Inc. v. California State Council of*

19  *Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

20        "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

21  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

22  do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d

23  929 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when

24  construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a

25  cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D.Cal.1998).  In

26  practice, a complaint "must contain either direct or inferential allegations respecting all the material

27  elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562,

28  127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984)) .

1   In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949, 173 L.Ed.2d 868 (2009), the U.S. Supreme

2   Court explained:

3       ... a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief

4       that is plausible on its face." ... A claim has facial plausibility when the plaintiff pleads factual

5       content that allows the court to draw the reasonable inference that the defendant is liable for the

6       misconduct alleged.... The plausibility standard is not akin to a "probability requirement," but it

7       asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

8   After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to

9   survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

10   must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*,

11   572 F.3d 962, 989 (9th Cir.2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949, 173 L.Ed.2d 868).

12       Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations

13   indicate the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d

14   1067, 1069 (11th Cir.1984).  For instance, a limitations defense may be raised by a Fed. R. Civ. P.

15   12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980); *see Avco*

16   *Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir.1982), cert. denied, 459 U.S. 1037, 103

17   S.Ct. 450, 74 L.Ed.2d 604 (1982).  A Fed. R. Civ .P. 12(b)(6) motion to dismiss may raise the

18   limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at

19   682.  If the limitations defense does not appear on the complaint's face and the trial court accepts

20   matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by

21   affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir.1978).

22   With these standards in mind, this Court turns to HSBC Defendants' challenges to the claims in the

23   FAC.

24       **1.**    **RESPA Claim and Statute of Limitations**

25       As the parties recognize, the applicable statute of limitations for Plaintiff's first cause of

26   action under RESPA is one year from the date of the occurrence of the violation. *Edwards v. First*

27   *American Corp.*, 517 F.Supp.2d 1199, 1204 (C.D.Cal. 2007) (quoting 12 U.S.C. § 2614).  Plaintiff

28   originally filed this action on March 12, 2012.  Plaintiff also does not contest that his claim accrued on

1  or around November 21, 2006, when he closed his loan.  Therefore, Plaintiff's RESPA claim is time-

2  barred unless the limitations period has been tolled.  To that end, Plaintiff alleges that his RESPA

3  claim was equitably tolled, that Defendants engaged in fraudulent concealment, and that the delayed

4  discovery rule applies to toll the limitations period.  Defendants argue that none of these apply to

5  Plaintiff's RESPA claim, and that it should be dismissed as untimely.

6                              i.        **Equitable Tolling**

7         "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements

8  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood

9  in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).

10  "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital

11  information bearing on the existence of his claim."  *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178

12  (9th Cir.2000). The Ninth Circuit has explained:

13         Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by the

14         defendant to prevent the plaintiff from suing. Instead it focuses on whether there was excusable

15         delay by the plaintiff. If a reasonable plaintiff would not have known of the existence of a

16         possible claim within the limitations period, then equitable tolling will serve to extend the

17         statute of limitations for filing until the plaintiff can gather what information he needs....

18         However, equitable tolling does not postpone the statute of limitations until the existence of a

19         claim is a virtual certainty.

20  *Santa Maria*, 202 F.3d at 1178 (citation omitted).

21         Courts are reluctant to invoke equitable tolling:

22         A statute of limitations is subject to the doctrine of equitable tolling; therefore, relief from strict

23         construction of a statute of limitations is readily available in extreme cases and gives the court

24         latitude in a case-by-case analysis.... The equitable tolling doctrine has been applied by the

25         Supreme Court in certain circumstances, but it has been applied sparingly; for example, the

26         Supreme Court has allowed equitable tolling when the statute of limitations was not complied

27         with because of defective pleadings, when a claimant was tricked by an adversary into letting a

28         deadline expire ... Courts have been generally unforgiving, however, when a late filing is due to

                                                    9

1 claimant's failure "to exercise due diligence in preserving his legal rights." ...

2 *Scholar v. Pac. Bell*, 963 F.2d 264, 267–268 (9th Cir.1992) (citations omitted).

3   Here, Plaintiff alleges no facts showing the exercise of any diligence on his part other than

4 one telephone conversation with an HSBC customer service representative named "Marlen" on March

5 5, 2012. Doc. 88, ¶ 150. This lone telephone conversation, which is apparently the only attempt

6 Plaintiff ever made at any sort of diligence over the course of five years after the accrual of Plaintiff's

7 claim, does not constitute Plaintiff "pursuing his rights diligently." *Pace v. DiGuglielmo*, 544 U.S. at

8 418.

9   Plaintiff then attempts to get around his clear lack of diligence by arguing that reasonable

10 diligence on his part would have been futile because the "complex, undisclosed and self-concealing

11 nature of Defendants' scheme" would have prevented him from discovering the existence of a possible

12 RESPA claim, and that he was only able to discover the basis of his claim with the assistance of

13 counsel. Doc. 88, ¶¶ 145-163. However, Plaintiff fails to mention what "extraordinary circumstance"

14 prevented him from obtaining assistance from counsel earlier, or how not retaining counsel earlier

15 constitutes an "extraordinary circumstance" that prevented him from filing his claim within the

16 limitations period. *Pace v. DiGuglielmo*, 544 U.S. at 418; *see, Ramirez v. Yates*, 571 F.3d 993, 997

17 (9th Cir.2009) (Party claiming equitable tolling must show "that the extraordinary circumstances were

18 the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a

19 petition on time" despite the exercise of reasonable diligence.). Further, to follow Plaintiff's line of

20 reasoning, any plaintiff who requires the assistance of counsel to discover the existence of a claim,

21 including plaintiffs who conduct virtually no diligence, would be automatically entitled to equitable

22 tolling of the statute of limitations for an indefinite period of time until that plaintiff retains counsel.

23 As the Ninth Circuit has recognized, equitable tolling is not available in most cases because the

24 threshold to trigger equitable tolling is very high, "lest the exception swallow the rule." *Porter v.*

25 *Ollison*, 620 F.3d 952, 959 (9th Cir.2010). For these reasons, Plaintiff has failed to meet his burden of

26 showing that he exercised reasonable diligence and that he was impeded by some extraordinary

27 circumstance to qualify for equitable tolling of the statute of limitations on his RESPA cause of action.

28    **ii.**  **Fraudulent Concealment**

         10

1    While "equitable tolling focuses on whether there was excusable delay by the plaintiff,"

2 "[e]quitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent

3 a plaintiff from filing suit, sometimes referred to as fraudulent concealment." *Lukovsky v. City and*

4 *County of San Francisco*, 5 F.3d 1044, 1051 (9th Cir. 2008) (citing *Johnson v. Henderson*, 314 F.3d

5 409 (9th Cir.2002)).

6    The Ninth Circuit recently explained:

7    A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a

8    cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of

9    its existence.   [The plaintiff] carries the burden of pleading and proving fraudulent

10    concealment; it must plead facts showing that [the defendant] affirmatively misled it, and that

11    [the plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim

12    despite its diligence in trying to uncover those facts.   A fraudulent concealment defense

13    requires a showing both that the defendant used fraudulent means to keep the plaintiff unaware

14    of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his

15    cause of action.

16 *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (internal quotations and

17 citations omitted).

18    "Fraudulent concealment necessarily requires active conduct by a defendant, above and

19 beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in

20 time." *Santa Maria v. Pacific Bell*, 202 F.3d at 1177.   "Where the basis of equitable tolling is

21 fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil

22 Procedure."   *Marzan v. Bank of America*, 779 F.Supp.2d 1140, 1149 (D.Haw. 2011) (citing *389*

23 *Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir.1999)).

24    Plaintiff argues that the statute of limitations for his RESPA claim should be tolled because

25 Defendants "knowingly and actively concealed the basis for Plaintiff's claims by engaging in a scheme

26 that was, by its very nature and purposeful design, self-concealing."   Doc. 88, ¶ 145.   Plaintiff also

27 alleges that Defendants "engaged in affirmative acts and/or purposeful nondisclosure to conceal the

28 facts and circumstances giving rise to" Plaintiff's RESPA claim.   Doc. 88, ¶ 151.   The affirmative acts

1   of fraudulent concealment by the Defendants that Plaintiff alleges are HSBC Defendants' use of form

2   mortgage documents and disclosures that do not sufficiently put Plaintiff "on notice of the true nature

3   of HSBC's captive reinsurance arrangements" and Defendants' faulty disclosures to state regulators.

4   Doc. 88, ¶¶ 152, 155.   However, the Ninth Circuit has repeatedly rejected claims of fraudulent

5   concealment where the plaintiffs fail to allege misrepresentation beyond the actual basis for the

6   lawsuit.  *See*, *Coppinger-Martin v. Solis*, 627 F.3d 745, 751-52 (9th Cir. 2010), *Lukovsky v. City and*

7   *County of San Francisco*, 5 F.3d at 1049-52.  Such arguments are untenable because they "merge[] the

8   substantive wrong with the tolling doctrine" and "would eliminate the statute of limitations[.]"

9   *Coppinger-Martin v. Solis*, 627 F.3d at 751-52, *Lukovsky v. City and County of San Francisco*, 5 F.3d

10  at 1052.  Likewise, Plaintiff's argument that the nature of Defendants' "self-concealing" scheme and

11  the form documents and disclosures used in that scheme constitute affirmative acts of fraudulent

12  concealment must fail.  In addition, even if Plaintiff's allegation that Defendants "actively concealed

13  their conduct" by making defective disclosures to state regulators is accepted as true, it does not meet

14  the heightened pleading standard required by Fed. R. Civ. P. 9(b).  *Marzan v. Bank of America*, 779

15  F.Supp.2d at 1149.  Plaintiff fails to allege what "conduct" the Defendants concealed from the

16  regulators, what disclosures Defendants made that were incomplete or inaccurate, or how these

17  defective disclosures prevented Plaintiff from obtaining information about his claim in spite of

18  exercising due diligence.  As such, Plaintiff failed to "state with particularity the circumstances

19  constituting fraud[.]"  Fed. R. Civ. P. 9(b).  For these reasons, Plaintiff failed to meet his burden in

20  order to toll the statute of limitations on the basis of fraudulent concealment.

21              iii.      **Delayed Discovery**

22              Under California's delayed discovery doctrine, "the limitations period does not accrue until

23  the aggrieved party has notice of the facts constituting the injury." *E–Fab, Inc. v. Accountants, Inc.*

24  *Services*, 153 Cal.App.4th 1308, 1318 (2007).  "The 'discovery rule' ... assumes that the elements of

25  accrual including harm exist, but tolls the ruling of the statute until the plaintiff is on inquiry notice of

26  its injury (and its wrongful cause)." *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th

27  Cir.1995).  To rely on delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face

28  that his claim would be barred without the benefit of the discovery rule must specifically plead facts to

1    show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite

2    reasonable diligence."  *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 808 (2005) (quoting

3    *McKelvey v. Boeing North American, Inc.*, 74 Cal.App.4th 151, 160 (1999)).

4            To satisfy the time and manner of discovery requirement, a plaintiff must allege "facts

5    showing the time and surrounding circumstances of the discovery of the cause of action upon which

6    they rely."  *Bennett v. Hibernia Bank*, 47 Cal.2d 540, 563 (1956).  "The purpose of this requirement is

7    to afford the court a means of determining whether or not the discovery of the asserted invasion was

8    made within the time alleged, that is, whether plaintiffs actually learned something they did not know

9    before."  *Bennett*, 47 Cal.2d at 563.

10           Moreover, "to adequately allege facts supporting a theory of delayed discovery, the plaintiff

11   must plead that, despite diligent investigation of the circumstances of the injury, he or she could not

12   have reasonably discovered facts supporting the cause of action within the applicable statute of

13   limitations period."  *Fox*, 35 Cal.4th at 809, 27.  The doctrine of delayed discovery requires a plaintiff

14   to plead facts showing an excuse for late discovery of the facts underlying his cause of action.

15   *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236, 1247 (1998).  The plaintiff

16   must show that it was not at fault for failing to discover or had no actual or presumptive knowledge of

17   facts sufficient to put it on inquiry.  *Prudential Home*, 66 Cal.App.4th at 1247.  As to sufficiency of

18   delayed discovery allegations, a plaintiff bears the burden to "show diligence" and "conclusory

19   allegations" will not withstand dismissal.  *Fox*, 35 Cal.4th 797, 808.

20           Plaintiff's only allegations in support of his claim of delayed discovery are that he was only

21   able to discover the basis of his RESPA claim with the assistance of counsel and that he contacted

22   HSBC in March 2012 after he discovered the underlying basis of his claim.  Doc. 88, ¶¶ 149-150.

23   Plaintiff fails to allege the time or manner of discovery at all other than that it was made with the

24   assistance of counsel.  The FAC therefore contains no "facts showing the time and surrounding

25   circumstances of the discovery of the cause of action" as required for the application of delayed

26   discovery.  *Bennett v. Hibernia Bank*, 47 Cal.2d at 563.  Plaintiff also fails to allege any facts showing

27   that he exercised any diligence at all prior to discovery.  Plaintiff is thus unable to plead that "despite

28   diligent investigation of the circumstances of the injury, he or she could not have reasonably

13

1  discovered facts supporting the cause of action within the applicable statute of limitations period."

2  *Fox*, 35 Cal.4th at 809, 27 Cal.Rptr.2d 661.   Therefore, Plaintiff fails to adequately plead delayed

3  discovery for his RESPA claim.

4          Because Plaintiff fails to meet the requirements of equitable tolling, fraudulent concealment,

5  and delayed discovery, the statute of limitations for his RESPA claim was not tolled and his first cause

6  of action under RESPA against all Defendants is DISMISSED as time-barred.

7          **2.      Unjust Enrichment**

8          In his second cause of action, Plaintiff claims that HSBC Defendants received unjust

9  enrichment from the amounts ceded to HSBC RE by PMI Defendants as reinsurance premiums from

10  the private mortgage premiums paid by Plaintiff and the putative class members.  Doc 88, ¶¶178-183.

11  Plaintiff further alleges that PMI Defendants received unjust enrichment from the steady stream of

12  business they received in return for ceding those portions of the borrowers' premiums to HSBC

13  Defendants.  *Id.* at ¶¶178-183.  Defendants argue and Plaintiff does not contest that the statute of

14  limitations applicable to a claim of unjust enrichment under California law is three years.  *See,*

15  *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 336 (N.D. Cal. 2010), *Fed. Deposit Ins.*

16  *Corp. v. Dintino*, 167 Cal. App. 4th 333, 347 (2008), *First Nationwide Savings v. Perry*, 11 Cal. App.

17  4th 1657, 1670 (1992).  Therefore, Plaintiff's second cause of action, like his first cause of action, is

18  also time-barred unless that statute of limitations has been tolled.  Plaintiff argues that the delayed

19  discovery rule should apply to toll the limitations period for his unjust enrichment claim based on

20  "[t]he same allegations, discussed above, that warrant application of the discovery rule to delay accrual

21  of RESPA's one-year statute of limitation[.]"  Doc. 119, p. 13.  However, Plaintiff's allegations upon

22  which he attempts to claim delayed discovery for this RESPA claim fall far short of meeting the

23  pleading requirement for delayed discovery.  *Bennett v. Hibernia Bank*, 47 Cal.2d at 563, *Fox*, 35

24  Cal.4th at 809, 27 Cal.Rptr.2d 661.  Likewise, because Plaintiff offers no additional allegations, he also

25  fails to invoke the delayed discovery doctrine for his unjust enrichment claim.  *Id.*

26          For these reasons, Plaintiff's second cause of action for common law unjust enrichment

27  against all Defendants is DISMISSED as time-barred by the statute of limitations.

28

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court

    1.  DISMISSES WITH PREJUDICE this action against Defendants Mortgage Guaranty Insurance Corp., Republic Mortgage Insurance Co., Radian Guaranty, Inc., and Genworth Mortgage Insurance Corp.;

    2.  DISMISSES WITH LEAVE TO AMEND Plaintiff's first cause of action for violations of the Real Estate Settlement Procedures Act of 1974 and second cause of action for common law unjust enrichment against Defendants HSBC USA, Inc., HSBC Bank USA, N.A., HSBC Mortgage Corp., HSBC Reinsurance (USA), Inc, and United Guaranty Residential Insurance Co.; and

    3.  DIRECTS the Clerk of Court to enter judgment in favor of Defendants Mortgage Guaranty Insurance Corp., Republic Mortgage Insurance Co., Radian Guaranty, Inc., and Genworth Mortgage Insurance Corp. and against Plaintiff Lucas E. McCarn in that there is no just reason to delay to enter such judgment given that Plaintiff's claims against these Defendants and their alleged liability are clear and distinct from claims against and liability of other Defendants. *See* F.R.Civ.P. 54(b).

Plaintiff shall have one opportunity to file and serve a further amended complaint in an attempt to cure the deficiencies described herein. Any such further amended complaint shall be filed and served within 20 days of electronic service of this order. Plaintiff is not afforded leave to alter any other aspect of his First Amended Complaint. Defendants HSBC USA, Inc., HSBC Bank USA, N.A., HSBC Mortgage Corp., HSBC Reinsurance (USA), Inc, and United Guaranty Residential Insurance Co. no later than 20 days after service of the further amended complaint shall file a response thereto.

IT IS SO ORDERED.

Dated:  **November 9, 2012**        **/s/ Lawrence J. O'Neill**
                                      UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, David E. Edwards, hereby certify that on this 26th day of November 2012, the

foregoing Motion to Dismiss and Brief was served electronically on all counsel and is available

for viewing and downloading from the ECF system.

Dated:  November 26, 2012                    WHITE AND WILLIAMS LLP

                              BY:  /s/ David E. Edwards
                                   David E. Edwards
                                   1650 Market Street
                                   1800 One Liberty Place
                                   Philadelphia, PA 19103
                                   (215) 864-7174/7166

                                   *Attorneys for United Guaranty Residential
                                    Insurance Company*
                                   (215)864-6306/7166

10242586v.1