IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NELSON WHITE, JR., et al., | : | |
|     Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 11-7928 |
| | : | |
| THE PNC FINANCIAL SERVICES | : | |
| GROUP, INC., et al., | : | |
|     Defendants. | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                      June 20, 2013

      This is a putative class action brought by Nelson White, Jr., Lisa White, Charles Hightower, Colleen Hightower, Dan B. Johnston, Michelle B. Johnston, George G. Donald, Jr., Luz Garcia, Jill Crumpler, and Kevin Zielinski (collectively, Plaintiffs) in connection with residential mortgage loans obtained from National City Mortgage (National City). Plaintiffs contend that National City and its affiliated reinsurer, National City Mortgage Insurance Company, Inc. (NCMIC), acted with private mortgage insurers Mortgage Guaranty Insurance Corporation (Mortgage Guaranty), Genworth Mortgage Insurance Corporation (Genworth), Republic Mortgage Insurance Company (Republic), and Radian Guaranty, Inc. (Radian), to carry out an illegal "captive reinsurance scheme."[1] Plaintiffs allege this scheme violated the Real Estate Settlement Procedures Act of 1974 (RESPA), specifically section 8(a), which prohibits giving or accepting "any

---

[1] The PNC Financial Services Group, Inc. (PNC), acquired National City Corporation in 2008 and became successor-in-interest to National City and NCMIC. I will refer to PNC, Mortgage Guaranty, Genworth, Republic, and Radian collectively as "Defendants." I will refer to Mortgage Guaranty, Genworth, Republic, and Radian collectively as "Insuring Defendants." Plaintiffs also sued PMI Mortgage Insurance Company, United Guaranty Residential Insurance Company, and Triad Guaranty Insurance Corporation (Triad), all of whom have since been dismissed as parties to this action. Doc. Nos. 69, 119, 124. Triad's motion to dismiss appears to still be pending; it is dismissed as moot.

fee, kickback, or thing of value pursuant to any agreement or understanding . . . that business incident to or a part of a real estate settlement service . . . shall be referred to any person," and section 8(b), which prohibits giving and accepting "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed."  12 U.S.C. § 2607(a)-(b).  Plaintiffs also assert a state-law claim for unjust enrichment.

Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. Nos. 91-92.  For the following reasons, I will grant the motions.

I.     BACKGROUND

Many of Plaintiffs' allegations in their seventy-five page amended complaint are irrelevant to the instant motions.  I therefore provide only a synopsis of Plaintiffs' substantive claims.

Plaintiffs obtained residential mortgage loans from National City between January 2006 and December 2008.  Because Plaintiffs made down payments toward the purchase of their homes of less than 20%, they were required to obtain private mortgage insurance from an insurer—in this case, Mortgage Guaranty, Genworth, Republic, or Radian—selected by National City.  These primary insurers subsequently reinsured with National City's captive reinsurer, NCMIC, pursuant to a "captive reinsurance arrangement."  Under this arrangement, the primary insurers paid NCMIC a portion of Plaintiffs' insurance premiums ostensibly in exchange for NCMIC assuming some of the primary insurer's risk.

2

Plaintiffs allege this arrangement violated RESPA's prohibition on kickbacks because premium payments from the primary insurers to NCMIC were made in return for National City's referral of business. 12 U.S.C. § 2607(a). Plaintiffs allege this arrangement also violated RESPA's prohibition on fee-splitting because NCMIC accepted a portion of Plaintiffs' insurance premiums but provided no service, only sham reinsurance, in return. Id. § 2607(b).

## II.     STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "[C]onclusory or 'bare-bones' allegations will no[t] . . . survive a motion to dismiss." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Plaintiffs contend they are entitled to equitable tolling due to fraudulent concealment. Courts assess allegations of fraudulent concealment under the heightened pleading standards of Rule 9(b), Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620, 626 (3d Cir. 1984), which requires plaintiffs to "state with particularity the circumstances

constituting fraud or mistake." Plaintiffs must describe "the circumstances of the alleged fraud with precise allegations of date, time, or place" or otherwise use "some means of injecting precision and some measure of substantiation into their allegations of fraud," as to each defendant against whom tolling is sought. Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.10 (3d Cir. 2002) (citation and internal quotation marks omitted); In re Elec. Carbon Products Antitrust Litig., 333 F. Supp. 2d 303, 315 (D.N.J. 2004) (explaining that equitable tolling through fraudulent concealment requires "an affirmative act of concealment by *each* defendant") (emphasis added). I am nonetheless mindful, despite Rule 9(b), that "because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion." In re Cmty. Bank of N. Virginia, 622 F.3d 275, 301-02 (3d Cir. 2010).

## III.   DISCUSSION

### A.   RESPA (Count I)

Defendants move pursuant to Rule 12(b)(6) to dismiss Plaintiffs' RESPA claims as untimely.[2] RESPA provides that an action under § 2607 must be brought "within . . . 1 year . . . from the date of the occurrence of the violation." 12 U.S.C. § 2614. The "date of the occurrence of the violation" is the date the loan closed. Cmty. Bank, 622 F.3d at

---

[2] The Third Circuit permits a limitations defense to be raised by a motion under Rule 12(b)(6) where, as here, "'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).

4

281.³  Plaintiffs' loans closed at the latest on December 24, 2008, over three years prior to the filing of this lawsuit on December 31, 2011.  Plaintiffs nonetheless contend their RESPA claims are timely based on "principles of equitable tolling."  Doc. No. 102 at 23.⁴

"Among the circumstances warranting equitable tolling are situations where 'the defendant has actively misled the plaintiff respecting the plaintiff's cause of action,' i.e. fraudulent concealment."  Forbes v. Eagleson, 228 F.3d 471, 486 (3d Cir. 2000) (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)).⁵  Equitable tolling based on fraudulent concealment requires a plaintiff to prove "three

---

³ Plaintiffs effectively abandoned their discovery rule allegation by failing to adequately pursue it in response to Defendants' motions.  Am. Compl. ¶ 158; Doc. No. 102 at 40 n.41.  This appears to be in line with Plaintiffs' counsel's strategy in other, virtually identical RESPA cases.  Riddle v. Bank of Am. Corp., CIV.A. 12-1740, 2013 WL 1482668, at *5 (E.D. Pa. Apr. 11, 2013).  Courts have found the discovery rule inapplicable to violations of § 2607 "because Congress was explicit in establishing a designated time for the filing of an action."  Mullinax v. Radian Guar. Inc., 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002); see also Samp v. JPMorgan Chase Bank, N.A., EDCV 11-1950VAP SPX, 2013 WL 1912869, at *9 (C.D. Cal. May 7, 2013) ("[T]he discovery rule does not apply to violations of § 2607.").  For these reasons, I do not address Plaintiffs' allegation that the discovery rule saves their untimely RESPA claims.

⁴ Defendants suggest in passing that RESPA's statute of limitations is jurisdictional and thus cannot be equitably tolled.  Doc. No. 91 at 7.  Although the Third Circuit has not yet addressed this issue, In re Cmty. Bank of N. Virginia, 622 F.3d 275, 307 (3d Cir. 2010), the clear weight of authority both inside and outside this Circuit holds that RESPA claims may be equitably tolled, see Barlee v. First Horizon Nat. Corp., CIV.A. 12-3045, 2013 WL 706091, at *4 (E.D. Pa. Feb. 27, 2013); Riddle, 2013 WL 1482668, at *5-6; Minter v. Wells Fargo Bank, N.A., 675 F. Supp. 2d 591, 594-95 (D. Md. 2009); Marple v. Countrywide Fin. Corp., 2008 U.S. Dist. LEXIS 37705, at *6-16 (D.N.J. May 7, 2008); Kay v. Wells Fargo & Co. N.A., C 07-01351 WHA, 2007 WL 2141292, at *3 (N.D. Cal. July 24, 2007); Mullinax, 199 F. Supp. 2d at 326-28; Smith v. EquipCredit Corp., CIV.A. 01-CV-4326, 2002 WL 32349873, at *3 n.2 (E.D. Pa. Oct. 4, 2002); Celimar Solar v. Millenium Fin., Inc., CIV.A. 01-CV-4327, 2002 WL 1019047, at *2 (E.D. Pa. May 17, 2002); Pedraza v. United Guar. Corp., 114 F. Supp. 2d 1347, 1351-54 (S.D. Ga. 2000); Moll v. U.S. Life Title Ins. Co. of New York, 700 F. Supp. 1284, 1286-88 (S.D.N.Y. 1988); Kerby v. Mortgage Funding Corp., 992 F. Supp. 787, 791-98 (D. Md. 1998); Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1166–67 (7th Cir. 1997); contra Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1039 (D.C. Cir. 1986).  Moreover, in holding that claims under the analogous Truth In Lending Act could be equitably tolled, the Third Circuit in Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 500-05 (3d Cir. 1998), declined to follow the D.C. Circuit's reasoning in Hardin and cited with approval the Seventh Circuit's decision in Lawyers Title.  In light of Ramadan, and finding no clear and unambiguous language in § 2614 to rebut "the well-established principle of law that equitable tolling doctrines are 'read into every federal statute of limitation,'" I find that Plaintiffs' RESPA claims may be equitably tolled.  156 F.3d at 504 (quoting Holmberg v. Armbrecht, 327 U.S. 392, 396-97 (1946)).

⁵ Equitable tolling may also be appropriate where "the plaintiff in some extraordinary way has been prevented from asserting his or her rights [or] where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."  Oshiver, 38 F.3d at 1387.  Plaintiffs do not contend they are entitled to equitable tolling on these bases.

5

necessary elements: (1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." Cetel v. Kirwan Fin. Group, Inc., 460 F.3d 494, 509 (3d Cir. 2006).

### 1. Active Misleading

The first Cetel factor requires a plaintiff to show that the defendant "engaged in affirmative acts of concealment designed to mislead the plaintiff[] regarding facts supporting" his claim. Forbes, 228 F.3d at 487. The Third Circuit has stressed that a "plaintiff must show *active misleading* by the defendant." Id. Absent an "affirmative duty to disclose," Mest v. Cabot Corp., 449 F.3d 502, 517 (3d Cir. 2006), "mere silence or nondisclosure is not enough," Garczynski v. Countrywide Home Loans, Inc., 656 F. Supp. 2d 505, 516 (E.D. Pa. 2009) (citation and internal quotation marks omitted).

Plaintiffs' allegations of concealment are confined entirely to documents provided by National City at the time of closing. Am. Compl. ¶¶ 172-73, 176, 178-79; Doc. No. 102 at 9-12, 31-36.[6] Plaintiffs contend these documents were affirmatively misleading because they misrepresented that premium payments to NCMIC would be in exchange for an actual transfer of risk. Doc. No. 102 at 34. Defendants contend this argument is unavailing because "[t]he purported act of misleading is no different from the underlying alleged RESPA violation." Doc. No. 106 at 7. I agree with Plaintiffs.

---

[6] Plaintiffs also contend they were actively misled by Defendants beginning in November 2011, when Plaintiffs first inquired about Defendants' captive reinsurance scheme. These alleged acts of concealment cannot support Plaintiffs' bid for equitably tolling, since they could not have prevented Plaintiffs "from recognizing the validity of [their] claim *within the limitations period*." Cetel, 460 F.3d at 509 (emphasis added).

Affirmative acts of concealment sufficient to invoke equitable tolling typically must be distinct from the underlying wrong, unless the latter is inherently fraudulent or "self-concealing." In re Aspartame Antitrust Litig., CIV.A.2:06-CV-1732, 2007 WL 5215231, at *4-5 (E.D. Pa. Jan. 18, 2007) (explaining the different approaches taken in the Third Circuit to the "affirmative act" requirement). Plaintiffs do not rest their bid for equitable tolling on self-concealing wrongs, Doc. No. 102 at 40 n.40, despite allegations in the amended complaint to that effect. Am. Compl. ¶¶ 158-59. Rather, Plaintiffs contend that National City's alleged misrepresentations regarding NCMIC's assumption of risk were distinct from the underlying RESPA violation and were thus sufficient to meet the affirmative act requirement.

Defendants rely heavily on McCarn v. HSBC USA, Inc., 1:12-CV-00375-LJO, 2012 WL 5499433 (E.D. Cal. Nov. 13, 2012), which addressed this question on allegations virtually identical to the instant case. As here, the plaintiffs in McCarn alleged that their lender misrepresented in its form mortgage documents that premium payments to its captive reinsurer were in exchange for an actual transfer of risk. The court rejected this argument, finding that it "'merge[d] the substantive wrong with the tolling doctrine'" and thus "fail[ed] to allege misrepresentation beyond the actual basis for the lawsuit." Id. (quoting Coppinger-Martin v. Solis, 627 F.3d 745, 751 (9th Cir. 2010)); see also Samp v. JPMorgan Chase Bank, N.A., EDCV 11-1950VAP SPX, 2013 WL 1912869, at *8 (C.D. Cal. May 7, 2013).

Similarly, in Kay v. Wells Fargo & Co. N.A., C 07-01351 WHA, 2007 WL 2141292 (N.D. Cal. July 24, 2007), the plaintiffs alleged "that Wells Fargo 'affirmatively

7

misrepresented' that [its captive reinsurer] took on some of the risk." Id. at *5.  The court found that this argument simply "repeat[ed] the upshot of [the plaintiffs'] RESPA claim." Id.  Because the plaintiffs "failed to allege anything more than the underlying violation," the court found no fraudulent concealment.  Id.

Plaintiffs point to Barlee v. First Horizon Nat. Corp., CIV.A. 12-3045, 2013 WL 706091 (E.D. Pa. Feb. 27, 2013), which also addressed this issue on allegations nearly identical to the instant case.  There, the court found that the plaintiffs had plausibly alleged an affirmative act of concealment.  The plaintiffs, the court held, were "not averring that defendants simply failed to disclose the alleged kickbacks."  Id. at *5.  Rather, the plaintiffs were alleging that the defendants affirmatively misled them by representing that premium payments to the captive reinsurer were for actual services rendered, rather than kickbacks and unearned fees.

Plaintiffs also point Riddle v. Bank of Am. Corp., CIV.A. 12-1740, 2013 WL 1482668 (E.D. Pa. Apr. 11, 2013), which followed Barlee's lead in finding, on virtually identical allegations, that the plaintiff's "mortgage documents affirmatively misled them to believe that kickbacks and unearned fees were actually fees for services rendered" and that such "misrepresentations are deemed separate and apart from the actual RESPA violation, which is complete when the fees are improperly accepted or shared."  Id. at *9.

In this regard, I agree with Barlee and Riddle.  McCarn and Kay rest on the notion that a misrepresentation is required to violate RESPA sections 8(a) and 8(b).  That is not the case.  See Marple v. Countrywide Fin. Corp., 2008 U.S. Dist. LEXIS 37705, at *11 (D.N.J. May 7, 2008) ("[I]n the case of a RESPA violation, it is not the fraudulent act that

8

provides the factual predicate for the claim; rather, it is the fee splitting that forms the basis of the claim."); Williams v. Saxon Mortg. Services, Inc., CIV.A. 06-0799-WS-B, 2007 WL 2828752, at *4 (S.D. Ala. Sept. 27, 2007) ("[I]n the RESPA context, the violation occurs when fees are improperly accepted, split or shared.  Any fraudulent concealment or deception in the closing documents would not violate the statute."); Pedraza v. United Guar. Corp., 114 F. Supp. 2d 1347, 1357 (S.D. Ga. 2000) ("RESPA can be violated without any misrepresentation at all.").  Plaintiffs are therefore not simply rehashing the alleged substantive wrong when they contend National City misrepresented NCMIC's assumption of risk.  Furthermore, National City's alleged misrepresentations were active and not merely non-disclosures.  Plaintiffs contend National City falsely stated that premium payments to NCMIC were in exchange for a bona fide transfer of risk, when in reality no actual or commensurate risk was ever transferred.[7]  Am. Compl. ¶ 173.  Plaintiffs have therefore plausibly alleged an affirmative act of concealment.

The Insuring Defendants nonetheless contend that Plaintiffs have failed to plausibly allege any affirmative acts of concealment on their part.  Doc. No. 108 at 4-6.  I agree.  As indicated, Plaintiffs' allegations of concealment are confined to form documents they were provided at the closing of their loans.  Despite Plaintiffs' use of the ambiguous phrase "Defendants' Form Documents," the amended complaint contains no allegation that the Insuring Defendants prepared these documents, provided them to Plaintiffs, or otherwise took any affirmative act with regard to them.  Rather, these

---

[7] The Third Circuit has suggested in dicta that this sort of behavior suffices to constitute an affirmative act of concealment.  Cmty. Bank, 622 F.3d at 307 n.24 ("[W]e note that the [defendants'] theory of fraudulent concealment—i.e., that fraudulent concealment requires some further act than . . . misrepresenting the nature of [settlement-service] fees—would effectively render equitable tolling in the RESPA . . . context a dead letter.").

documents were prepared and provided to Plaintiffs by National City, their lender.  Am. Compl. ¶ 173 ("National City used its form mortgage documents . . . to affirmatively mislead Class members."); id. ¶ 178 ("National City intentionally designed any disclosure that it provided to its borrowers in such a manner as to conceal . . . the underlying basis for their claims.").[8]

Effectively conceding this point, Plaintiffs invite me to "infer fraudulent concealment by the [Insuring Defendants] based on the disclosure violations and other misleading acts of National City."  Doc. No. 102 at 31 n.29.  Plaintiffs claim the Insuring Defendants colluded with National City "to conceal their collective violations of RESPA's anti-kickback provisions from Plaintffs."  Id.  While actively colluding with National City to misrepresent Plaintiffs' mortgage documents may constitute an affirmative act of concealment, e.g., Mullinax v. Radian Guar. Inc., 199 F. Supp. 2d 311, 330 (M.D.N.C. 2002), Plaintiffs make no such claim.  The amended complaint contains only general allegations of a "scheme" or "agreement" between the Insuring Defendants and National City, Am. Compl. ¶¶ 11, 14-15, 41, 73, 90-91, 114, 158, 159, 192, much less any precise or substantiated allegation, in accord with Rule 9(b), that the Insuring Defendants colluded with National City to misrepresent Plaintiffs' mortgage documents.  As discussed above, to benefit from equitable tolling, a plaintiff must show "an affirmative act of concealment by *each* defendant."  Elec. Carbon Products, 333 F. Supp. 2d at 315 (emphasis added).  Because Plaintiffs have failed to plead with particularity any

---

[8] Plaintiffs do not contend the Insuring Defendants were under an "affirmative duty to disclose" that might turn their silence into fraud.  Doc. No. 102 at 31 n.29; Mest, 449 F.3d at 517.

active misleading by the Insuring Defendants, I will grant their motion and address the remaining Cetel factors as to PNC alone.

### 2. Reliance/Inquiry Notice

The second Cetel factor requires a plaintiff to show that the defendant's acts of concealment prevented him "from recognizing the validity of her claim within the limitations period." 460 F.3d at 509. This factor is rooted in the related concepts of reliance and inquiry notice. As for reliance, a plaintiff must show that he actually relied upon the defendant's concealment in thinking he did not have a cause of action. Forbes, 228 F.3d at 487; In re Magnesium Oxide Antitrust Litig., CIV. 10-5943 DRD, 2011 WL 5008090, at *23 (D.N.J. Oct. 20, 2011). As a corollary, inquiry notice reflects "the principle that the 'doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'" In re Processed Egg Products Antitrust Litig., MDL 2002, 2011 WL 5980001, at *3 (E.D. Pa. Nov. 30, 2011) (quoting Davis v. Grusemeyer, 996 F.2d 617, 624 (3d Cir. 1993)). Plaintiffs must therefore allege, consistent with Rule 9(b), that they "were not aware, nor should they have been aware, of the facts supporting their claim until a time within the limitations period measured backwards from when the plaintiffs filed their complaint." Forbes, 228 F.3d at 487.

PNC argues that Plaintiffs' own allegations demonstrate they were on inquiry notice of any potential RESPA claim. PNC first points to the mortgage documents, which not only indicated that Plaintiffs' loans may be placed in a "captive reinsurance" arrangement, but also identified NCMIC by name, indicated that National City "may

11

receive a financial benefit as a result" of the arrangement, and invited Plaintiffs to opt-out if they did not want their loans reinsured with NCMIC.  Am. Compl. ¶¶ 20 Ex. 7; 21 Ex. 10; 22 Ex. 12; 23 Ex. 14; 24 Ex. 17; 25 Ex. 19; 178 Exs. 78-84.[9]  PNC also points to the public information cited by Plaintiffs in their amended complaint, including news articles, government reports, related lawsuits, congressional testimony, and regulatory filings, some of which date back to 1997 and all of which address the propriety of captive reinsurance arrangements.  Id. ¶¶ 64 Ex. 38; 73 Ex. 42; 89 Ex. 45; 94 Ex. 54; 102 n.14; 122 Ex. 65.

As for the public information, Plaintiffs emphasize that they never alleged it placed them on notice of their potential claims against National City and that, in any event, a determination of its import is inappropriate at the motion to dismiss stage.  I agree.  Whether these public documents provided Plaintiffs with constructive notice of their claims is a factual inquiry beyond the scope of PNC's motion.  See In re Fasteners Antitrust Litig., CIV.A. 08-MD-1912, 2011 WL 3563989, at *6 (E.D. Pa. Aug. 12, 2011) ("The factual nature of the inquiry involves an evaluation of Plaintiffs' exposure to these articles, the circulation of various publications, and the likelihood that a reasonable plaintiff would have read such documents."); Mullinax, 199 F. Supp. 2d at 332.

The mortgage documents, to which Plaintiffs were indisputably exposed, warrant a closer look.  PNC argues that these documents contained all the relevant facts Plaintiffs now cite in support of their claims; that is, "each Plaintiff's mortgage and [private

---

[9] I note briefly that Plaintiffs do not contest PNC's reliance on their mortgage documents at the motion to dismiss stage.  These documents are, obviously, integral to and explicitly relied upon by Plaintiffs in their complaint, and I may therefore them consider them without converting PNC's motion to dismiss into one for summary judgment.  In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997).

12

mortgage insurance] disclosure clearly outlined the possibility of a reinsurance relationship that would result in [National City] receiving a portion of the mortgage insurance premiums." Doc. No. 106 at 7. This argument is not wholly without merit. After all, as Plaintiffs allege, "[c]aptive mortgage reinsurance arrangements such as National City's arrangements with the [Insuring Defendants] raise obvious RESPA kickback/fee splitting problems." Am. Compl. ¶ 88. And there is no question that Plaintiffs' mortgage documents identified the possibility of a "captive reinsurance" arrangement in which NCMIC would take "a share of the insurer's risk in exchange for a share of the premiums," resulting in a "financial benefit" to National City. Certainly, if this arrangement were all Plaintiffs alleged in their amended complaint, they would have been on ample notice of their claims and their bid for equitable tolling would fail.

But this is *not* what Plaintiffs allege. Plaintiffs allege that the arrangement portrayed by National City was a sham and that premiums ceded to NCMIC were not in exchange for an actual or commensurate transfer of risk. Any "financial benefit" to National City, Plaintiffs allege, was not the result of a service rendered, as the mortgage documents represent, but rather was a kickback and unearned split fee. National City surely did not disclose *this* arrangement. Accordingly, I find that Plaintiffs have plausibly alleged their mortgage documents did not place them on inquiry notice of the instant claims. Am. Compl. ¶¶ 173, 178. National City is alleged to have misrepresented the "critical fact that would have alerted a reasonable person" to Plaintiffs' RESPA claims, namely the nature of premium payments to NCMIC. Oshiver, 38 F.3d at 1392.

Nevertheless, Plaintiffs have not plausibly alleged that they "were not aware, nor should they have been aware, of the facts supporting their claim *until a time within the limitations period*." Forbes, 228 F.3d at 487 (emphasis added).  Adequate pleading in this regard is essential, since "tolling lasts only 'until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action.'" Id. (quoting Oshiver, 38 F.3d at 1392).  Plaintiffs do not plead a tolling date, and the amended complaint contains no indication as to when, and under what circumstances, Plaintiffs discovered the critical facts underlying their RESPA claims.  Plaintiffs merely allege, without elaboration, that "they were able to discover the underlying basis for the[ir] claims . . . only with the assistance of counsel."  Am. Compl. ¶ 162.  There is accordingly no basis in the amended complaint, much less one consistent with Rule 9(b), on which I could conclude that Plaintiffs were reasonably unaware of the relevant facts until a time within the limitations period.  E.g., Processed Egg Products, 2011 WL 5980001, at *9 ("[T]o allege, as Plaintiffs have, that they did not know and should not have known, in the exercise of reasonable diligence, of the elements of their claim 'until very recently,' or 'at an earlier date' does not plausibly suggest . . . they are entitled to tolling until a time within the limitations period."); Magnesium Oxide, 2011 WL 5008090, at *25 ("Without some level of specificity regarding Plaintiffs' discovery of the alleged conspiracy, it is impossible to discern whether Plaintiffs could or should have discovered it within the limitations period.").  Although Plaintiffs have plausibly alleged that they were not—for a time—on inquiry notice of the relevant facts, because they

14

failed to plead with particularity the timing or circumstances of their discovery, their bid for equitable tolling ends here.

### 3. Reasonable Due Diligence

Plaintiffs' pleading deficiencies with respect to the second Cetel prong bleed into the third, which requires a plaintiff to show that her "ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." 460 F.3d at 509. Aside from "fully participating in their loan transactions," Am. Compl. ¶ 182, Plaintiffs plead no specific acts of diligence until November 2011, after they discovered the basis for their claims with the assistance of counsel and just a month shy of this lawsuit's filing, when they first contacted PNC regarding National City's captive reinsurance program, id. ¶¶ 164-71.

At the outset, I cannot say on the facts alleged that Plaintiffs' participation in their loan transactions suffices by itself to constitute reasonable due diligence. Plaintiffs were required to be diligent "throughout the time period in which they claim the statute of limitations should be tolled." Processed Egg Products, 2011 WL 5980001, at *13. Their duty to diligently pursue their rights did not end at the closing of their loans. Plaintiffs again point to Barlee, 2013 WL 706091, and Riddle, 2013 WL 1482668, for support. Those cases, relying on Marple, 2008 U.S. Dist. LEXIS 37705, found that "due diligence is sufficiently alleged by a plaintiff's full participation in his or her loan transaction coupled with a defendant's acts of concealment." Riddle, 2013 WL 1482668, at *10. In Marple, the plaintiff alleged that a misrepresentation on her HUD-1 form warranted equitable tolling of RESPA's limitations period. As for the due diligence prong, the

plaintiff alleged not only that "she actively participated in the settlement process and reviewed the relevant documents" but *also* that "'she began investigating abusive practices by Defendants in connection with their lending services that were brought to light in the media in August, 2007.'" 2008 U.S. Dist. LEXIS 37705, at *15-16 (quoting Compl. at 48). In this regard, Marple is readily distinguishable from the instant case, where Plaintiffs do not allege they did *anything* beyond participating in their loan transactions and waiting until some unspecified time, when prompted by unspecified circumstance, they sought, or were sought out by, counsel.[10]

Sensing weakness in what they did do, Plaintiffs attempt to justify what they did not do. Plaintiffs contend that they "had no basis upon which to investigate the validity" of Defendants' captive reinsurance scheme and that any "delay was excusable because they did not discover, and reasonably could not have discovered, Defendants' conduct . . . absent specialized knowledge and/or assistance of counsel." Am. Compl. ¶ 162. The notion that "no diligence may be reasonable under certain circumstances" does have some appeal, Processed Egg Products, 2011 WL 5980001, at *9; In re Elec. Carbon Products Antitrust Litig., 333 F. Supp. 2d 303, 317 (D.N.J. 2004); Aspartame, 2007 WL 5215231, at *6, and the third prong of Cetel, which is phrased in the negative, appears to contemplate the possibility that affirmative acts of diligence may be unnecessary as long

---

[10] This is not to say that a plaintiff's participation in his or her loan transaction cannot serve as an act of diligence, or that doing so and nothing more would always be patently unreasonable, only that because Plaintiffs have so thoroughly failed to plead the timing and circumstances surrounding the discovery of their claims' factual basis, I cannot say they were diligent "*throughout* the time period in which they claim the statute of limitations should be tolled." Processed Egg Products, 2011 WL 5980001, at *13 (emphasis added).

16

as a plaintiff's "ignorance is not attributable to her lack of reasonable due diligence." 460 F.3d at 509.

But even this line of thinking cannot save the amended complaint. As indicated, Plaintiffs have plausibly alleged that they were, for a time, reasonably unaware of the facts underlying their claims. At some point, however, these facts came to Plaintiffs' attention. It is this "some point" and its accompanying circumstances that are wholly absent from the amended complaint. Plaintiffs sole factual allegation in this regard—that "they were able to discover the underlying basis for the[ir] claims . . . only with the assistance of counsel"—provides no frame of reference for their discovery and does not enable me to conclude, even at this early stage, that Plaintiffs earlier ignorance was not attributable to their lack of diligence. Processed Egg Products, 2011 WL 5980001, at *13. Because Plaintiffs have fallen short of "fully plead[ing] the facts and circumstances surrounding [their] belated discovery,'" In re Lower Lake Erie Iron Ore Antitrust Litig., 998 F.2d 1144, 1179 (3d Cir. 1993) (quoting Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir. 1975)), I find they have not plausibly alleged reasonable due diligence, consistent with Cetel and Rule 9(b).

Plaintiffs have failed to adequately plead the second and third prongs of Cetel's equitable tolling analysis. Their RESPA claims are untimely. I will therefore grant PNC's motion and dismiss Count II without prejudice.

      **B.**    **Unjust Enrichment (Count II)**

Having dismissed Plaintiffs' RESPA claims, I decline to exercise supplemental jurisdiction over their remaining state-law claim for unjust enrichment. See 28 U.S.C. §

1367(c)(3); <u>Figueroa v. Buccaneer Hotel Inc.</u>, 188 F.3d 172, 181 (3d Cir. 1999).

Accordingly, Count II is dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the motions to dismiss of PNC, Mortgage Guaranty, Genworth, Republic, and Radian are granted. The amended complaint is dismissed without prejudice.[11]

An appropriate order follows.

---

[11] Because the amended complaint is factually, not legally, deficient, a curative amendment would not necessarily be futile. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 245-46 (3d Cir. 2008). Plaintiffs are therefore granted leave to file a second amended complaint within fourteen (14) days of this Memorandum and Order, if they can in good faith. If Plaintiffs choose to file a second amended complaint, they must include with it a redline version clearly showing all changes against the amended complaint. If Plaintiffs choose not file a second amended complaint, the amended complaint will be dismissed with prejudice and this case closed.