**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NELSON WHITE, JR.,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **THE PNC FINANCIAL SERVICES GROUP, INC.,** *et al.*, <br><br> Defendants. | Civil Action No. 2:11-cv-07928-LS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
TO LIFT STAY AND FOR LEAVE TO AMEND THE COMPLAINT**

Plaintiffs Nelson White, Jr., Lisa White, Charles Hightower, Colleen Hightower, Dan B. Johnston, Michelle B. Johnston, George G. Donald, Jr., Luz Garcia, Jill Crumpler and Kevin Zielinski ("Plaintiffs") hereby seek an Order lifting the stay and granting them leave to file the Third Amended Class Action Complaint, attached hereto as Exhibit A. As set forth below, Plaintiffs should be granted leave to include claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and to modify their claim under the Real Estate Settlement Procedures Act of 1974 ("RESPA"). As Plaintiffs have not acted with undue delay and as the proposed amendment is neither prejudicial to Defendants nor futile, the Motion should be granted.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The instant matter concerns alleged fraudulent and illegal captive reinsurance arrangements ("CRAs"), which were foisted upon home mortgage borrowers, who were required

to purchase private mortgage insurance.[1]  Defendants National City Corporation, National City

Bank, N.A., National City Mortgage a division of National City Bank, National City Mortgage a

Division of National City Bank of Indiana and  National City Mortgage Company (the "National

City Lenders") originated home mortgage loans throughout the United States during the relevant

time period.  Where private mortgage insurance was required, the National City Lenders selected

a private mortgage insurer, without any involvement from the borrower.   The National City

Lenders, however, only engaged private mortgage insurers, who agreed to enter into CRAs with

the National City Lenders' affiliated reinsurer, National City Mortgage Insurance Company, Inc.

("NCMIC") (collectively, "National City" or "Defendants").[2]  Pursuant to the CRAs, the private

mortgage insurers agreed to cede (or pay) to NCMIC a percentage of the private mortgage

insurance premiums that were collected from borrowers.   These premiums were ceded for

purported "reinsurance services."  However, NCMIC failed to provide true reinsurance services,

rendering the payment of borrower premiums to NCMIC an illegal kickback.  Based on these

allegations, Plaintiffs asserted claims under Sections 8(a) and 8(b) of RESPA for violating the

statute's prohibition on kickbacks and referral fees and also a claim for unjust enrichment.  *See*

*generally* ECF No. 148.

Plaintiffs filed their initial Complaint on December 31, 2011.  ECF No. 1.  On March 6,

2012, upon a joint motion by the parties, the Court stayed all proceedings, pending the U.S.

Supreme Court decision in *First American Fin. Corp. v. Edwards*, No. 10-708.  ECF No. 64.

The stay was lifted on August 1, 2012.  ECF No. 76.  Plaintiffs then filed an Amended

---

[1] Typically, private mortgage insurance is required for home mortgage loans where the borrowers did not make a down payment of at least 20% of the purchase price.  Private mortgage insurance protects the mortgage lender in the event of default.  The borrower generally pays monthly premiums for the private mortgage insurance.

[2] Defendant The PNC Financial Services Group, Inc. ("PNC") is the successor-in-interest to National City.

Complaint on September 27, 2012.  ECF No. 83.  Defendants filed a motion to dismiss the Amended Complaint, and on June 20, 2013, the Court entered a Memorandum Opinion and Order, dismissing without prejudice.  ECF Nos. 145 & 146.  On July 5, 2013, Plaintiffs filed their Second Amended Complaint addressing the deficiencies identified by the Court.  ECF No. 148.  Defendants again moved to dismiss, however the Court denied the motion in its entirety on August 18, 2014.  ECF Nos. 185 & 186.

On September 9, 2014, at the parties' request, the Court entered another stay, pending the Third Circuit's decision in *Riddle v. Bank of Am. Corp.*, No. 13-4543 (3d Cir.).  ECF No. 194. The Third Circuit thereafter issued a non-precedential opinion in *Riddle* that held that the plaintiffs there were not entitled to equitable tolling in support of their RESPA claim.  *Riddle v. Bank of Am. Corp.*, 588 Fed. App'x 127 (3d Cir. 2014).  The stay in this case was lifted on November 10, 2014, and on November 17, 2014, Defendants filed a motion for reconsideration of the Court's denial of its motion to dismiss, in light of the *Riddle* decision.  ECF Nos. 195 & 196.  The Court denied Defendants' motion, noting that *Riddle* was not "controlling law" and therefore "cannot serve as a basis for reconsideration."  ECF No. 208 at 2.  On March 11, 2015, upon request of the parties, the Court entered a third Order staying all proceedings pending the appeal in *Cunningham v. M&T Corp.*, No. 15-1412 (3d Cir.).  ECF No. 219.  On February 19, 2016, the Third Circuit issued an opinion in *Cunningham* likewise holding that the plaintiffs were not entitled to equitable tolling for their RESPA claim.  *Cunningham v. M&T Bank Corp.*, 814 F.3d 156 (3d Cir. 2016).

Plaintiffs now seek to amend their complaint to include claims under RICO and to alter the RESPA claim such that it is limited to violations within the one year statutory period.  As set forth below, Plaintiffs' proposed amendment should be permitted.

## II.     ARGUMENT

### A.     Motion to Amend Standard

Pursuant to the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "[T]he pleading philosophy of the Rules counsels in favor of liberally permitting amendments to a complaint." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 629 (3d Cir. 2013) (citing *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir.1984)). A district court should permit an amendment to the complaint unless the court finds that a plaintiff has acted with undue delay, is motivated by bad faith, or the amendment would be prejudicial to the opposing party. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272-73 (3d Cir. 2001).

Amendments under Rule 15 relate back to the date of the original pleading where, among other things, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." FED. R. CIV. P. 15(c)(1)(B). "[A]pplication of Rule 15(c)(1)(B) normally entails a 'search for a common core of operative facts in the two pleadings.'" *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012) (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir.2004)). The "underlying question for a Rule 15(c) analysis is 'whether the *original* complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint.'" *Id.* at 146 (quoting *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008)).

### B.     Plaintiffs' Proposed Claims

In pertinent part, Plaintiffs' proposed amended complaint alleges that Defendants' CRAs constituted a fraudulent scheme in violation of RICO. Defendants and the private mortgage

insurers that participated in the CRAs constituted an association-in-fact RICO enterprise. Several representations made by Defendants in their mortgage documents were fraudulent or misleading, and as a result, Defendants committed numerous instances of mail and/or wire fraud – predicate acts under RICO. Moreover, Plaintiffs suffered an injury to their business or property as a result of Defendants' conduct. In particular, Plaintiffs were compelled to fund the illegal kickbacks which flowed from the private mortgage insurers to NCMIC. Accordingly, Plaintiffs assert two claims under RICO. *See* Exhibit A ¶¶ 247-293.

Plaintiffs' proposed RESPA claim is substantively identical to the claim to the RESPA claim alleged in the Second Amended Complaint. The sole difference is that Plaintiffs' proposed RESPA claim does not purport to rely upon the equitable tolling doctrine and instead seeks damages only for violations which occurred within the one year statutory period. *See* Exhibit A ¶¶ 294-311.

### C. Plaintiffs Have Satisfied the Rule 15 Standard

#### 1. Plaintiffs did not unduly delay in seeking their proposed amendment

"The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay. In fact, delay alone is an insufficient ground to deny leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted). Delay "becomes 'undue,' and thereby creates grounds for the district court to refuse leave [to amend], when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Cureton*, 252 F.3d at 273). The inquiry into undue delay includes consideration of the court's "[i]nterests in judicial economy and finality," as well as a "focus on the movant's reasons for not amending sooner." *USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir.2004).

Here, although Plaintiffs' initial complaint was filed on December 31, 2011, the case has been stayed three times (ECF Nos. 64, 194 & 219) for a period of nearly two years.  These stays were appropriate, especially as to *Riddle* and *Cunningham* – both factually and legally analogous to this case and Plaintiffs' original RESPA claims.  Because of the stays, this case has not proceeded beyond the Court's ruling on Defendants' motion to dismiss the Second Amended Complaint (and the subsequent motion for reconsideration).  No scheduling order has been entered, and discovery has not commenced.  Accordingly, Plaintiffs have not delayed unduly. *See Langbord v. U.S. Dep't of the Treasury*, 749 F. Supp. 2d 268, 271-5 (E.D. Pa. 2010) (finding that four year delay in filing motion to amend was not undue delay); *Jackson v. Lehigh Valley Physicians Group*, No. 08-cv-3043, 2010 WL 3855274, at *2 (E.D. Pa. Sept.29, 2010) (finding that delay was not undue even though plaintiff sought leave to amend two years after filing an amended complaint); *compare E. Minerals & Chem. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (affirming district court's denial of motion to amend complaint six months after amendment and joinder deadlines had expired); *Panetta v. SAP America, Inc.*, 294 Fed. App'x 715, 718 (3d Cir. 2008) (affirming district court's decision to deny leave to amend complaint to add additional claim after the close of discovery); *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 123 (W.D. Pa. 2010) (denying motion to amend where new claims were known to plaintiffs early in litigation but plaintiffs waited until close of discovery to amend).  Moreover, any delay here should not be considered undue where the parties jointly sought stays and extensions in this matter.  *See Forbes v. Eagleson*, 183 F.R.D. 440, 442 (E.D. Pa. 1998) (finding no undue delay where complaint was amended "for a fifth time nearly three years after this action was originally brought" where there were "numerous agreements by the parties to extend

briefing and pleading deadlines" and where a stay of the proceedings had been imposed). Plaintiffs have not delayed unduly.

                2.    <u>Defendants will not be prejudiced by the amendment</u>

The prejudice determination "requires that [the court] focus on the hardship to the [non-movant] if the amendment were permitted" and whether the amendment will require "additional discovery, cost, and preparation...." *Cureton*, 252 F.3d at 273. "[T]he non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (citations omitted).

Here, Defendants can demonstrate no hardship stemming from the proposed amendment. The case has essentially been stayed since the ruling on Defendants' motion to dismiss the Second Amended Complaint. The parties have not had to expend any resources aside from the pleadings, and discovery has not yet begun. Further, while the proposed amendment would add new RICO claims, the underlying facts have not changed. Accordingly, Defendants will not be prejudiced. *See Vanderhoof-Forschner v. Vanderhoof*, No. 11-cv-1309, 2012 WL 2839337, at *6 (D.N.J. July 9, 2012) ("no prejudice will be found where the amendment does not result in new facts requiring extensive additional discovery") (citing *Adams*, 739 F.2d at 869); *Trueposition, Inc. v. Allen Telecom, Inc.*, No. 01-cv-823, 2002 WL 1558531, at *2 (D. Del. July 16, 2002) (finding that proposed amendment would not prejudice defendant "[s]ince discovery is in its earliest stages [and] amendment of the complaint will not deprive [defendant] of the opportunity to present facts or evidence or otherwise prepare and present its case.") *compare Johnston v. City of Philadelphia*, 158 F.R.D. 352, 353-4 (E.D. Pa. 1994) (collecting cases finding undue prejudice where the proposed amendment would require additional discovery after the

discovery period was closed); *McKenna v. City of Philadelphia*, 511 F. Supp. 2d 518, 528 (E.D. Pa. 2007) (finding that amendment proposed after summary judgment motions and the completion of discovery will prejudice defendants because "new issues will likely require additional discovery into the circumstances of the plaintiffs' terminations and additional expert testimony to quantify the plaintiffs' claimed loss of pay").

3.   The proposed amendment is not futile

"'Futility' challenges an amendment's legal sufficiency." *Freedom Int'l Trucks, Inc. of New Jersey v. Eagle Enterprises, Inc.*, 182 F.R.D. 172, 175 (E.D. Pa. 1998). "[I]n deciding whether an amendment is futile, a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997)). A "proposed amendment is not futile [where it] would withstand a motion to dismiss." *Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir.2012).

(a)   Similar claims have already survived a motion to dismiss

Substantively similar RICO and unjust enrichment claims have already been sustained over a motion to dismiss by the Honorable Cathy Bissoon in *Weiss v. Bank of America Corp.*, 153 F. Supp. 3d 831 (W.D. Pa. 2015). The plaintiffs in *Weiss*, like Plaintiffs here, were home mortgage borrowers who were required to purchase private mortgage insurance that was purportedly reinsured through a CRA. And as Plaintiffs propose here, the plaintiffs in *Weiss* alleged that their mortgage lender, the private mortgage insurers and the lender's captive reinsurer constituted an association-in-fact RICO enterprise that committed acts of mail and/or wire fraud in order to extract money from borrowers to fund illegal kickbacks flowing from the private mortgage insurers to the captive reinsurer. *Weiss v. Bank of America Corp.*, No. 15-cv-62 (W.D. Pa.), ECF No. 1.

8

The defendants in *Weiss* challenged the RICO claims on several grounds. Initially, the defendants challenged the timeliness of the plaintiffs' claims, arguing that the claims accrued at the time of their closings. The defendants further argued that the plaintiffs lacked standing under RICO and ran afoul of the filed rate doctrine. The defendants also challenged the allegations of a RICO enterprise and of predicate acts. Lastly, the defendants asserted that the unjust enrichment claims were without merit. *Id.*, ECF No. 15.

Judge Bissoon denied the defendants' motion in its entirety. In particular, Judge Bissoon held that the plaintiffs had adequately alleged application of the injury discovery rule. *Weiss*, 153 F. Supp. 3d at 842-43. Aside from timeliness, Judge Bissoon held that the filed rate doctrine did not preempt the plaintiffs' RICO claims. *Id.* at 843-44. Further, Judge Bissoon found that the plaintiffs had adequately alleged claims under RICO – that the lender, captive reinsurer and private mortgage insurers constituted a RICO enterprise and operated as a scheme or artifice to defraud, committing numerous acts of mail and wire fraud. *Id.* at 845-59. The court also sustained the plaintiffs' unjust enrichment claims. *Id.* at 850. Thus, *Weiss* clearly establishes that Plaintiffs' proposed RICO and unjust enrichment claims are not futile.

(b)    Defendants' equitable tolling arguments do not apply

In contrast to RESPA's one year statutory period, RICO has a four year statute of limitations. *See Sarpolis v. Tereshko*, No. 13-cv-5521, 2014 WL 2765088, at *26 (E.D. Pa. June 17, 2014). Moreover, in determining when a RICO claim accrues, courts apply the injury discovery rule, rather than the equitable tolling doctrine. Under the injury discovery rule, "a RICO claim accrues when plaintiffs knew or should have known of their injury." *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006). Equitable tolling and the injury discovery rule are two distinct doctrines. As summarized by the Third Circuit:

the discovery rule and the equitable tolling doctrine are similar in one respect and different in another. The doctrines are similar in that each requires a level of diligence on the part of the plaintiff; that is, each requires the plaintiff to take reasonable measures to uncover the existence of injury… The plaintiff who fails to exercise this reasonable diligence may lose the benefit of either doctrine. The two doctrines differ, however, with respect to the type of knowledge or cognizance that triggers their respective applications. ***The discovery rule keys on a plaintiff's cognizance, or imputed cognizance, of actual injury***. [] Equitable tolling, on the other hand, keys on a plaintiff's cognizance, or imputed cognizance, of the facts supporting the plaintiff's cause of action.

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1390 (3d Cir. 1994) (emphasis added) (citations omitted).  This distinction is significant here.  Under equitable tolling the necessary cognizance was simply whether Plaintiffs were aware of the facts supporting their claims – Defendants' CRAs.  Under the discovery rule, however, Plaintiffs need be cognizant of their actual injury – being forced to fund illegal kickbacks.  Plaintiffs simply could not have been aware of this injury until after they were contacted by counsel.  *See Weiss*, 153 F. Supp. 3d at 840 (stating that "[t]he Court is careful not to 'conflate the concept of equitable tolling … with the discovery rule doctrine" and declining to rely on RESPA, equitable tolling cases for the RICO, injury discovery rule analysis).

Defendants will likely cite the Third Circuit's recent opinion in *Cunningham v. M&T Bank Corp.*, 814 F.3d 156 (3d Cir. 2016) as grounds to deny the instant Motion, however any reliance on *Cunningham* would be misplaced. *Cunningham* concerns the timeliness of a RESPA claim under the equitable tolling doctrine and not the timeliness of a RICO claim under the injury discovery rule.  The *Cunningham* court itself recognized the import of this distinction.  *See id.* at 162 ("the discovery rule is not apt for RESPA claims because Congress specifically provided that the limitations period begins to run on 'the date of the occurrence of the violation.' ***It is thus irrelevant for purposes of the statute of limitations in RESPA when a reasonable plaintiff would have discovered her claim***.").

Moreover, the *Cunningham* court makes clear that its analysis only applies to equitable tolling (and not the injury discovery rule) and highlights the difference between the two.   In pertinent part, the *Cunningham* court states that:

> At the closing, Plaintiffs were made aware that the mortgage insurance on their home might be reinsured with an affiliate of M&T Bank and, at that moment, they had all the facts necessary to develop their claims under RESPA.

*Cunningham*, 814 F.3d at 162.  The court reasoned that the plaintiffs in *Cunningham* thus could not avail themselves of equitable tolling because they should have been aware of the ***facts*** underlying their RESPA claim at the time of their closings.  *See id.* at 163 (citing *Oshiver*, 38 F.3d at 1390 for the proposition that "equitable tolling … keys on a plaintiff's cognizance … of the facts").  The *Cunningham* court did not address (or even consider) whether or when the plaintiffs were cognizant of their ***actual injury*** or the ***source of their injury.***  *See id.*; *Oshiver*, 38 F.3d at 1390 ("The discovery rule keys on a plaintiff's cognizance, or imputed cognizance, of actual injury").  Because *Cunningham* does not address the discovery of the plaintiffs' injury, it cannot be controlling as to the accrual of Plaintiffs' RICO claims under the injury discovery rule, and the *Cunningham* decision does not support an argument of futility.

(c)   <u>The proposed RICO claims are timely without the discovery rule</u>

Plaintiffs' RICO claims are also timely under the separate accrual rule.  The "separate accrual" rule provides that "the commission of a separable, new predicate act within a 4-year limitations period permits a plaintiff to recover for the additional damages caused by that act." *Sunlight Elec. Contracting Co., Inc. v. Turchi*, 918 F. Supp. 2d 392, 403 (E.D. Pa. 2013) (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1984)); *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 09-cv-379, 2010 WL 597475, at *3 (W.D. Pa. Feb. 16, 2010) ("Under the separate accrual rule, each injury must be new and independent, and not a continuation, accumulation or recharacterization of an old injury.").

Here, Plaintiffs and Class members were injured each time that the private mortgage insurers ceded premiums to NCMIC, *i.e.* each time they were forced to fund the illegal kickbacks. Each kickback was a new and independent injury caused by the commission of new acts of mail and/or wire fraud. Thus, Plaintiffs' RICO claims are timely even without the injury discovery rule. *See Kuznyetsov*, 2010 WL 597475, at *3 ("the receipt of each pay check is a new and independent injury and not simply a continuation of an old injury since each paycheck would reflect a separate and discrete pay period during which Plaintiffs may have been paid"); *Love v. Nat'l Med. Enterprises*, 230 F.3d 765, 775 (5th Cir. 2000) (holding that the separate accrual rule applied to civil RICO cases and finding that "[e]ach time [plaintiff] became obligated to pay a fraudulent [] insurance claim submitted by [defendant], [plaintiff] suffered an injury "to its business or property").

(d)   <u>The proposed RESPA claim is timely without equitable tolling</u>

Plaintiffs do not rely upon the equitable tolling doctrine for their modified RESPA claim, because the claim is triggered each time a private mortgage insurer ceded premiums to NCMIC. The plain language of RESPA prohibits a party from giving or accepting any "fee, kickback, or thing of value" in exchange for the referral of business "incident to part of a real estate settlement service …." 12 U.S.C. § 2607(a)-(b). RESPA also provides for a one year statute of limitations. 12 U.S.C.A. § 2614 ("Any action … of this title may be brought … within … 1 year in the case of a violation of section 2607 or 2608 of this title ***from the date of the occurrence of the violation***") (emphasis added).

Last year, in *In the Matter of PHH Corp.*, Richard Cordray, Director of the Consumer Financial Protection Bureau ("CFPB") (the agency charged with enforcing RESPA), determined that a RESPA "violation" occurs "every time" there is a kickback under the statute. *See In the Matter of PHH Corp.*, 2014-CFPB-0002 at 22 (CFPB June 4, 2015), attached hereto as Exhibit

B.  *In the Matter of PHH Corp.* was an appeal of an administrative enforcement action brought by the CFPB against a mortgage lender, PHH, and their captive reinsurer, among others, for the same type of CRAs at issue here.  After hearing the appeal, Director Cordray issued a decision and final order which determined that PHH had violated RESPA by accepting kickbacks in the form of reinsurance premiums from certain private mortgage insurers.  *See generally* Exhibit B. Notably, Director Cordray determined that:

> PHH violated RESPA every time it accepted a reinsurance premium from a mortgage insurer pursuant to a captive reinsurance agreement because those reinsurance premiums were kickbacks.

*Id.* at 22.[3]

The proposed amended complaint modifies Plaintiffs' RESPA claim such that the equitable tolling doctrine is no longer implicated.  Consistent with *In the Matter of PHH Corp.*, Plaintiffs allege that Defendants violated RESPA every time they accepted a ceded premium from the private mortgage insurers, on the grounds that each of these payments were, in reality, kickbacks paid in exchange for the referral of private mortgage insurance business.  *See* Exhibit A ¶¶ 294-311.  Thus, as to the RESPA claim, Plaintiffs proceed only on behalf of a class of borrowers who paid private mortgage insurance premiums that were ceded to NCMIC within the one year statutory period.  *See, e.g.*, Exhibit A ¶¶ 167, 186, 310.  Plaintiffs' RESPA claim in the proposed amended complaint is timely, and the amendment is not futile.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Lift Stay and for Leave to Amend the Complaint should be granted.

---

[3] PHH has appealed Director Cordray's decision and final order, and the appeal is currently pending in the U.S. Court of Appeals for the District of Columbia Circuit, Case No. 15-82110.

Dated:  September 7, 2016

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

By:  /s/ Edward W. Ciolko
Joseph H. Meltzer
Edward W. Ciolko
Terence S. Ziegler
Amanda R. Trask
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**BRAMSON PLUTZIK MAHLER &
BIRKHAEUSER LLP**
Alan R. Plutzik
2125 Oak Grove Boulevard, Ste. 120
Walnut Creek, California 94598
Telephone: (925) 945-0200

**BERKE, BERKE & BERKE**
Ronald J. Berke
420 Frazier Avenue
Chattanooga, Tennessee 37402
Telephone: (423) 266-5171

***Attorneys for Plaintiffs and the Proposed Classes***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 7, 2016, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.

/s/ Edward W. Ciolko
Edward W. Ciolko
