# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NELSON WHITE, JR., et al.,** | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 11-7928 |
| | : | |
| **THE PNC FINANCIAL SERVICES GROUP, INC., et al.,** | : | |
| | : | |
| Defendants. | : | |

## M E M O R A N D U M

**STENGEL, C. J.**                                                                           August 24, 2017

## I.  INTRODUCTION

This is a putative class action brought by homeowners claiming violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 (RESPA). The plaintiffs filed a Motion to Strike several of the defendants' affirmative defenses.

## II.  BACKGROUND

The plaintiffs claim the defendants carried on a "captive reinsurance scheme" in which the defendants enjoyed kickbacks, referrals, and fees that are prohibited by RESPA. Plaintiffs allege that the defendant insurers, lenders, and reinsurers have colluded to create a scheme that violates RESPA. Plaintiffs maintain that the lenders, as a general practice, form subsidiary companies that become the reinsurers. These lenders then systematically refer homeowners to the insurers to buy mortgage insurance. In exchange for a constant stream of profit-producing homeowner-borrowers, the insurers then pay a kickback to the reinsurer who, as a subsidiary, is really just an extension of the

1

lender. Plaintiffs claim this "pay-to-play" scheme harms homeowners because, by colluding, the insurers, reinsurers, and lenders, were able to reduce competition in the mortgage insurance market, thereby increasing the premium payments the homeowner-plaintiffs are required to pay to maintain their mortgage insurance.

Several months ago, in allowing plaintiffs to amend their claims, I held that RESPA was violated each time an allegedly illegal kickback, fee, or referral was given or received. White v. PNC Fin. Servs. Grp., Inc., 11–cv–7928, 2017 WL 85378, at *13 (E.D. Pa. Jan. 10, 2017). I also held that the continuing violations doctrine applied to plaintiffs' claims, thereby saving them from RESPA's one-year statute of limitations. Id. at *6. Following that decision, defendant The PNC Financial Services Group, Inc. ("PNC") filed an interlocutory appeal. The Third Circuit rejected PNC's attempt to appeal my decision. (Doc. No. 264). The case then proceeded to discovery, which is where it stands now.

The plaintiffs move to strike PNC's following affirmative defenses:

*First Defense*

Plaintiffs' claims and those of the putative class are or may be barred by the applicable statute of limitations. Without in any way limiting the foregoing, PNC specifically reserves all rights to challenge the Court's determination that RESPA's one-year statute of limitations is subject to the "continuing violation" doctrine. Further, even under the continuing violation theory asserted by Plaintiffs, PNC asserts that any period PMI premium paid prior to December 31, 2010 is barred by the RESPA limitations period. PNC asserts the same principles with respect to the unjust enrichment claim. (Doc. No. 265, Answer at 50–51).

*Third Defense*

Plaintiffs' RESPA claims fail because PNC did not make any referrals to the Mortgage Insurers after December 31, 2010. (Answer at 51).

*Seventh Defense*

Plaintiffs' claims against PNC are barred because Plaintiffs paid mortgage insurance rates filed with and/or approved by state regulators. (Answer at 52).

*Eighth Defense*

Plaintiffs lack standing under Article III and RESPA to bring some or all of their claims in this case, including claims related to reinsurance agreements that are inapplicable to their loans. (Answer at 52).

### III. LEGAL STANDARD

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a party may move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The pleading standard for an affirmative defense is set forth in Rule 8(c), which requires a party to "affirmatively state any avoidance or affirmative defense." An affirmative defense is "[a] matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it." In re Sterten, 546 F.3d 278, 284 n.9 (3d Cir. 2008) (alteration in original) (citing BLACK'S LAW DICTIONARY 60 (6th ed. 1990)).

The striking of a pleading is "a 'drastic remedy' to be used sparingly because of the difficulty of deciding a case without a factual record." Dann v. Lincoln Nat'l Corp., 274 F.R.D. 139, 142 (E.D. Pa. 2011) (quoting BJ Energy, LLC v. PJM Interconnection, LLC, Nos. 08–3649, 09–2864, 2010 WL 1491900, at *1 (E.D. Pa. Apr. 13, 2010)). Accordingly, a motion to strike will not be granted if "the sufficiency of a defense depends on disputed issues of fact. Even when the facts are not in dispute, Rule 12(f) is

not meant to afford an opportunity to determine disputed and substantial questions of law." Dann, 274 F.R.D. at 143.

Motions to strike are generally disfavored. Id. at 142. Such motions are usually denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." River Road Dev. Corp. v. The Carlson Corp., Civ. A. No. 89–7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990) (citing 5 CHARLES ALLAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1382, at 807 (1969)). Nevertheless, a motion to strike under Rule 12(f) "is the 'primary procedure' for objecting to an insufficient affirmative defense." Mifflinburg Telegraph, Inc. v. Criswell, 80 F. Supp. 3d 566, 573 (M.D. Pa. 2015) (quoting United States v. Marisol, Inc., 725 F. Supp. 833, 836 (M.D. Pa. 1989)). In some cases, motions to strike "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." Id. (quoting Marisol, 725 F. Supp. at 837); New Jersey v. RRI Energy Mid-Atlantic Power Holdings, LLC, Civ. A. No. 07–cv–5298, 2010 WL 3958777, at *4 (E.D. Pa. Sept. 30, 2010) ("[M]otions to strike save time and expense by making it unnecessary to litigate claims that will not affect the outcome of the case.").

### IV. DISCUSSION

Plaintiffs move to strike PNC's first, third, seventh, and eighth affirmative defenses.

4

### A. First and Third Defenses: Statute of Limitations

At this stage of the litigation, I will deny the plaintiffs' motion to strike PNC's first and third affirmative defenses. The sufficiency of these defenses depends upon disputed issues of fact that remain unclear because discovery has not concluded.

Plaintiffs argue that, in White v. PNC Fin. Servs. Grp., Inc., 11–cv–7928, 2017 WL 85378 (E.D. Pa. Jan. 10, 2017), I found the continuing violations doctrine applicable to plaintiffs' claims. Plaintiffs are correct. Under the continuing violations doctrine, a statute of limitations begins to run from the date of the last violation rather than the date of the first violation. Id. at *5. In this case, the alleged "violations" are the kickbacks, fees, and referrals paid by the lenders, banks, and insurers. 12 U.S.C. § 2607. Finding the doctrine applicable to plaintiffs' claims, I concluded in the above decision that:

> Defendants violated RESPA—assuming the veracity, at this stage, of plaintiffs' allegations—each time an allegedly illegal kickback, fee, or referral was given or received. This captive reinsurance scheme, as pled, constitutes a continuing violation of RESPA. Because I find the continuing violations doctrine applicable, the statute of limitations runs from the date of the last RESPA violation rather than the first.

White, 2017 WL 85378, at *13.

The above decision was made under our motion to dismiss standard, which requires me to assume the truth of the plaintiffs' allegations. Here, by contrast, I may not grant the plaintiffs' motion to strike the first and third affirmative defenses—which relate to the statute of limitations—because "the sufficiency of [these] defense[s] depends on disputed issues of fact." Dann, 274 F.R.D. at 143. Even though the continuing violations doctrine applies to plaintiffs' claims, plaintiffs still must prove that the defendants

5

violated RESPA by actually making illegal kickbacks, fees, or referrals. Whether this happened is a factual dispute.[1]

Accordingly, I will deny plaintiffs' motion to strike PNC's first and third affirmative defenses.

B. *Seventh Defense: Filed Rate Doctrine*

I will grant plaintiffs' motion to strike PNC's seventh affirmative defense.

PNC's seventh affirmative defense states: "Plaintiffs' claims against PNC are barred because Plaintiffs paid mortgage insurance rates filed with and/or approved by state regulators. (Answer at 52). This type of defense implicates what is known as the "filed rate doctrine." "The filed rate doctrine provides that a rate filed with and approved by a governing regulatory agency is unassailable in judicial proceedings brought by ratepayers." Alston v. Countrywide Fin. Corp., 585 F.3d 753, 763 (3d Cir. 2009).

---

[1] If and to the extent discovery reveals violations of RESPA, plaintiffs are correct that under the "law of the case" doctrine, the continuing violations doctrine would apply to save their claims from the statute of limitations. See Hamilton v. Leavy, 322 F.3d 776, 786 (3d Cir. 2003) ("The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation."). In other words, the continuing violations doctrine undoubtedly applies to this case, assuming that illegal kickbacks, referrals, or fees occurred. The question that remains is: will the facts revealed by discovery show that illegal kickbacks, referral, or fees actually occurred? Without the benefit of discovery, I cannot answer this question at this stage and consequently must deny the motion to strike.

To be sure, my denial of this motion to strike should in no way be misconstrued as an invitation for PNC to urge me to rule differently than I did in White v. PNC Fin. Servs. Grp., Inc., 11–cv–7928, 2017 WL 85378 (E.D. Pa. Jan. 10, 2017) on the continuing violations issue. Under the law of the case doctrine, that ruling remains binding. The only way the continuing violations doctrine would not apply to save plaintiffs' claims from the statute of limitations is if it somehow turns out that no illegal kickbacks, fees, or referrals occurred.

In Alston v. Countrywide Financial Corp., 585 F.3d 753 (3d Cir. 2009), the U.S. Court of Appeals for the Third Circuit held that the filed rate doctrine does not bar plaintiffs from bringing captive-reinsurance-scheme claims under Section 8(a) of RESPA. Key to the Third Circuit's decision was the fact that the plaintiffs did not challenge the fairness of the mortgage insurance rates set by Pennsylvania state regulators. Alston, 585 F.3d at 764. Rather, the plaintiffs challenged the defendants' conduct with respect to their mortgage insurance: carrying on a captive reinsurance scheme in violation of RESPA. Id. Thus, when there is—as here—a challenge to the "allegedly wrongful conduct, not the reasonableness or propriety of the rate that triggered that conduct," the filed rate doctrine simply does not apply. Id. at 765.

PNC recognizes that its filed-rate-doctrine defense is foreclosed by Third Circuit precedent. (Doc. No. 277 at 11) ("PNC acknowledges that the Third Circuit held in *Alston* that the filed rate doctrine did not apply to bar claims brought under Section 8(a) of RESPA."). However, PNC argues that it should still be allowed to pursue this defense in order to seek a potential ruling from the U.S. Supreme Court in its favor. PNC is incorrect. Under basic principles of *stare decisis*, "[a]bsent a Supreme Court decision to the contrary, district courts are compelled to follow mandates of appellate courts." Briley v. City of Trenton, 164 F.R.D. 26, 29 (D.N.J. 1995) (quoting Litman v. Massachusetts Mut. Life Ins. Co., 825 F.2d 1506, 1508 (11th Cir. 1987), cert. denied, 484 U.S. 1006 (1988)); see also Hammond v. Commonwealth Mtg. Co. of Am., 156 B.R. 943, 947 (E.D. Pa. 1993) ("In view of the Supreme Court's reticence, principles of stare decisis

7

command this Court to follow the law as set forth by the Court of Appeals for the Third Circuit."), aff'd, 27 F.3d 52 (3d Cir. 1994)).

PNC may be correct that there is a circuit split regarding the filed rate doctrine's applicability to claims brought under Section 8(a) of RESPA. However, my job is not to resolve circuit splits. The Third Circuit has squarely ruled on the filed rate doctrine's applicability to the exact claims brought in this case. Alston, 585 F.3d at 763–65. The Third Circuit clearly held that the filed rate doctrine does not apply in these kinds of cases. I am bound to follow this precedent. Hammond, 156 B.R. at 947; cf. Munoz v. PHH Corp., No. 1:08–cv–759, 2013 WL 1278509, at *7–8 (E.D. Cal. Mar. 26, 2013) (granting plaintiffs' motion to strike filed-rate-doctrine defense in a RESPA case, under the law of the case doctrine, and rejecting defendants' position that relied on non-binding out-of-circuit precedent). PNC's seventh affirmative defense is clearly insufficient under this Circuit's precedent.

Accordingly, I will grant the plaintiffs' motion to strike PNC's seventh affirmative defense.[2]

---

[2] PNC argues that even though its seventh affirmative defense is clearly foreclosed by Third Circuit precedent, it would be "efficient" to allow PNC to engage in discovery on this issue so that PNC may prepare a factual record for appeal. PNC has the cart before the horse. See Criswell, 80 F. Supp. 3d at 573 (noting that in some circumstances motions to strike may "serve a useful purpose by eliminating insufficient defenses and saving . . . time and expense"). It is crystal clear that, in this Circuit, the filed rate doctrine is not a viable defense to a claim under Section 8(a) of RESPA in which a captive reinsurance scheme is alleged. Alston, 585 F.3d at 763–65. That is the exact type of claim brought here. PNC's disagreement with our binding precedent does not entitle PNC to expend this Court's resources, its own resources, or the plaintiffs' resources in discovery. With that said, I will deny the plaintiffs' motion to strike the seventh

### C. The Eighth Defense: Standing

I will deny plaintiffs' motion to strike PNC's eighth affirmative defense with one caveat.

PNC's eighth affirmative defense states: "Plaintiffs lack standing under Article III and RESPA to bring some or all of their claims in this case, including claims related to reinsurance agreements that are inapplicable to their loans." (Answer at 52). Plaintiffs argue that—like its filed rate doctrine defense—PNC's standing defense is foreclosed by Alston.

In Alston, the Third Circuit addressed whether plaintiffs bringing a claim under Section 8(a) of RESPA have standing to sue even if they allege no "overcharge" by the defendant. 585 F.3d at 759–63. The Third Circuit answered that question in the affirmative. PNC argues that its standing defense does not relate to Alston's standing holding. PNC purports to challenge the named plaintiffs' standing to bring claims on behalf of purported class members whose loans are not impacted by a reinsurance arrangement. To the extent that PNC does not raise the same sort of standing argument already foreclosed by Alston, I will deny the plaintiffs' motion to strike PNC's eighth affirmative defense. Although the plaintiffs argue that PNC's eighth affirmative defense

---

affirmative defense only as the defense applies to the plaintiffs' unjust enrichment claims. The resolution of that issue is not clearly settled by Third Circuit precedent.

is not exactingly clear, it provides "fair notice" of the issue involved. Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 901 (E.D. Pa. 2011).[3]

Accordingly, the plaintiffs' motion to strike PNC's eighth affirmative defense is denied to the extent PNC's standing argument relates to issues not already resolved in Alston.[4]

## V. CONCLUSION

For all the reasons stated above, the plaintiffs' motion to strike PNC's affirmative defenses is granted in part and denied in part.

---

[3] Unlike the pleading of a claim, "[a]n affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved." Tyco, 777 F. Supp. 2d at 900.

[4] In its brief, PNC claims that its eighth affirmative defense "is not limited to the 'overcharge' issued addressed in *Alston*." (Doc. No. 277 at 14). This seems to imply that PNC is also challenging the binding import of Alston's holding regarding standing. Such a defense would be insufficient—just as PNC's filed-rate-doctrine defense is. See supra § IV(B). Thus, to the extent PNC attempts to relitigate the standing issues already resolved by Alston, the plaintiffs' motion to strike PNC's eighth affirmative defense is granted.

10